1

**BERNS WEISS LLP**
Jeffrey K. Berns (SBN 131351)
jberns@bernsweiss.com
Lee A. Weiss (admitted *pro hac vice*)
lweiss@bernsweiss.com
20700 Ventura Boulevard, Suite 140
Woodland Hills, CA 91364
Tel.: (818) 961-2000
Fax: (818) 936-0232

**SPIRO MOORE LLP**
J. Mark Moore (SBN 180473)
mark@spiromoore.com
11377 W. Olympic Blvd., Fifth Floor
Los Angeles, CA 90064-1683
Tel.: (310) 235-2468
Fax: (310) 235-2456

**WILLIAMS CUKER BEREZOFSKY LLC**
Mark R. Cuker (admitted *pro hac vice*)
mcuker@weblegal.com
1515 Market Street, Suite 1300
Philadelphia, PA 19102
Tel.: (215) 557-0099
Fax: (215) 557-0673

**ARBOGAST BOWEN LLP**
David M. Arbogast (SBN 167571)
david@arbogastbowen.com
Chumahan B. Bowen (SBN 268136)
cbowen@arbogastbowen.com
11400 W. Olympic Blvd., 2nd Floor
Los Angeles, CA 90064
Tel.: (310) 477-7200
Fax: (310) 943-2309

[*Additional counsel listed on signature page*]

Attorneys for Plaintiffs and the Proposed Classes

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY R. PEEL AND CHERYL G. PEEL, RUSS BEBOUT, MICHAEL SANFORD and MARILYN SANFORD and DESIREE MCILRATH on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROOKSAMERICA MORTGAGE CORPORATION, a California Corporation; WASHINGTON MUTUAL MORTGAGE SECURITIES CORP., formerly sued as DOE 1; WAMU ASSET ACCEPTANCE CORP., formerly sued as DOE 2; RESIDENTIAL FUNDING COMPANY, LLC, formerly sued as DOE 3; and DOES 4 through 200 inclusive,<br><br>Defendants. | CASE NO. 8:11-cv-0079-JST (RNBx)<br><br>CLASS ACTION<br>***Redacted for Public Filing***<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date:   June 25, 2012<br>Time:   10:00 a.m.<br>Place:   Courtroom 10A<br>Judge:   Hon. Josephine Staton Tucker<br><br>Complaint Filed:   October 20, 2010<br>Case Removed:   January 14, 2011<br>Trial Date:   Not yet set |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 25, 2012, at 10:00 a.m, or as soon thereafter as may be heard, in Courtroom 10A of the above-entitled Court, located at 411 West Fourth Street, Santa Ana, California, Plaintiffs and Proposed Class Representatives Timothy R. Peel and Cheryl G. Peel, Russ Bebout, and Michael Sanford and Marilyn Sanford, individually and on behalf of all others similarly situated ("Plaintiffs"),[1] will and hereby do move this Court for an order:

1.     To certify this action, pursuant to Fed. R. Civ. P. 23, as maintainable as a class action;

2.     To certify the following Classes and Subclasses:

a.  Proposed RFC Class:

All individuals who obtained an Option ARM Loan from January 16, 2004 through the date that notice is mailed to the Class, which loan (1) was acquired by Residential Funding Company, LLC ("RFC") by paying all or part of the sale price to the lender that maintained the originating entity's line of credit; (2) was secured by real property in the State of California; (3) was not originated by a national bank, federal savings association, or an affiliate, division, subdivision, predecessor, or parent of RFC; and (4) had the following characteristics: (a) the "Interest Rate" paragraph of the Note (¶ 2) states both (i) a "yearly" Interest Rate that is less than the index plus the margin; and (ii) that the Interest Rate "may" rather than "will" change;  (b) the "Initial Monthly Payment" listed in the Note is based upon the yearly interest rate listed in paragraph 2; and (c) the Note does not contain any statement that after the first Interest Rate Change Date, paying the amount listed as the "Initial Monthly Payment" 'will' result in negative amortization or deferred interest.  Excluded from this Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives, located in the United States of America.

b.  Proposed BrooksAmerica-RFC Subclass:

All RFC Class members whose Option ARM loans were originated by BrooksAmerica Mortgage Corporation.

c.  Proposed WaMu Class:

---

[1] Named Plaintiff Deisree McIlrath is not seeking to serve as a Class representative.

All individuals who obtained an Option ARM Loan from January 16, 2004 through the date that notice is mailed to the Class, which loan (1) was acquired by Washington Mutual Mortgage Securities Corp. ("WMMSC") or WaMu Asset Acceptance Corp. ("WAAC") by paying all or part of the sale price to the lender that maintained the originating entity's line of credit; (2) was secured by real property in the State of California; (3) was not originated by a national bank, federal savings association, or an affiliate, division, subdivision, predecessor, or parent of WMMSC or WAAC; and (4) had the following characteristics:  (a) the "Interest Rate" paragraph of the Note (¶ 2) states both (i) a "yearly" Interest Rate that is less than the index plus the margin; and (ii) that the Interest Rate "may" rather than "will" change; (b) the "Initial Monthly Payment" listed in the Note is based upon the yearly interest rate listed in paragraph 2; and (c) the Note does not contain any statement that after the first Interest Rate Change Date, paying the amount listed as the "Initial Monthly Payment" 'will' result in negative amortization or deferred interest.  Excluded from this Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives, located in the United States of America.

d.  Proposed BrooksAmerica-WaMu Subclass:

All WaMu Class members whose Option ARM loans were originated by BrooksAmerica Mortgage Corporation.

3.     Certifying Plaintiffs Russ Bebout, and Michael Sanford and Marilyn Sanford, as representatives of the RFC Class and the BrooksAmerica-RFC Subclass; and Plaintiffs Timothy R. Peel and Cheryl G. Peel as representatives of the WaMu Class and the BrooksAmerica-WaMu Subclass.

4.     Appointing Plaintiffs' counsel, Berns Weiss LLP, Williams Cuker Berezofsky LLC, Spiro Moore LLP, and Arbogast Bowen LLP, as Co-Lead Counsel for the Classes and Subclasses.

This motion is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure, and is based on this notice and motion, the accompanying Memorandum of Points and Authorities, the Declarations of Jeffrey K. Berns, Lee A. Weiss, and Dale Kurland (attached to Berns Declaration) filed herewith, and the exhibits thereto, the complete files and records in this action, and upon such other and further argument and evidence that may be presented by Plaintiffs in reply or at the time of the hearing on this motion.

1   This motion is made after conferences of counsel that occurred on numerous

2   occasions and is filed pursuant to the Court's order requiring that Plaintiffs' class

3   certification motion be filed by April 12, 2012.

4   DATED:      April 12, 2012                    **BERNS WEISS LLP**

5                                        By:    s/Jeffrey K. Berns
                                                Jeffrey K. Berns
6                                               20700 Ventura Boulevard, Suite 140
                                                Woodland Hills, CA 91364
7                                               Tel.:  (818) 961-2000
                                                Fax:  (818) 936-0232
8
                                                – and –
9
                                                Lee A. Weiss (admitted *pro hac vice*)
10                                              626 RXR Plaza
                                                Uniondale, New York 11556
11                                              Tel.:  (516) 222-2900
                                                Fax:  (818) 936-0232
12
                                                **WILLIAMS CUKER BEREZOFSKY LLC**
13                                              Mark R. Cuker (admitted *pro hac vice*)
                                                1515 Market Street, Suite 1300
14                                              Philadelphia, PA 19103-1819
                                                Tel.:  (215) 557-0099
15                                              Fax:  (215) 557-0673

16                                              **SPIRO MOORE LLP**
                                                J. Mark Moore
17                                              11377 W. Olympic Boulevard, Fifth Floor
                                                Los Angeles, California 90064-1683
18                                              Tel.:  (310) 235-2468
                                                Fax:  (310) 235-2456
19
                                                **ARBOGAST BOWEN LLP**
20                                              David M. Arbogast
                                                Chumahan B. Bowen
21                                              11400 W. Olympic Blvd., 2nd Floor
                                                Los Angeles, CA 90064
22                                              Tel.:  (310) 477-7200
                                                Fax:  (310) 943-2309
23
                                                **SMOGER & ASSOCIATES**
24                                              Gerson H. Smoger (SBN 79196)
                                                Steven M. Bronson (SBN 246751)
25                                              bronsonlaw@gmail.com
                                                3175 Monterey Blvd
26                                              Oakland, CA, 94602-3560
                                                Tel.:  (510) 531-4529
27                                              Fax:  (510) 531-4377

28

Plaintiffs' Motion for Class Certification - 8:11-cv-0079-JST (RNBx)

**ANDRUS ANDERSON LLP**
Jennie Lee Anderson (SBN 203586)
jennie@andrusanderson.com
Jessica Moy (SBN 272941)
jessica@adrusanderson.com
155 Montgomery St., Suite 900
San Francisco, CA 94104
Tel: (415) 986-1400
Fax: (415) 986-1474

**BLOOD HURST & O'REARDON LLP**
Timothy G. Blood (SBN 149343)
Tblood@bholaw.com
Thomas Joseph O'Reardon II (SBN 247952)
TOReardon@bholaw.com
600 B Street, Suite No. 1550
San Diego, CA 92101
Tel.:  (619) 338-1100
Fax:  (619) 338-1101

Attorneys for Plaintiffs and the Proposed
Classes

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

Page

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    The Uniformly Deceptive Loan Documents. . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    The Mortgage Banker Business Model Depended on the Assistance of Loan Purchasers Like WMMSC and RFC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.    BrooksAmerica Was a Typical Loan Originator for WMMSC and RFC. . . . 6

    D.    WMMSC's Role in Aiding and Abetting BrooksAmerica and the Other Originators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    E.    RFC's Role in Aiding and Abetting BrooksAmerica and the Other Originators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    F.    RFC and WMMSC Materially Assisted Option ARM Originators by Agreeing in Advance to Purchase Their Loans, Approving Their Loan Documents, and Paying Their Warehouse Lenders . . . . . . . . . . . . . . . . . . . 11

III.  STANDARDS ON CLASS CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . 11

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.    This Case is Ideally Suited for Class Treatment. . . . . . . . . . . . . . . . . . . . 12

    B.    Rule 23(a)'s Requirements are Satisfied. . . . . . . . . . . . . . . . . . . . . . . . . . 13

        1.    The Class is Sufficiently Numerous and Readily Ascertainable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        2.    There Are Questions of Law and Fact Common to the Class. . . . . . 13

        3.    Plaintiffs' Claims are Typical of Class Members' Claims. . . . . . . . 14

        4.    Plaintiffs Are Adequate Representatives. . . . . . . . . . . . . . . . . . . . . . 15

    C.    The Proposed Class Satisfies All of Rule 23(b)(3)'s Requirements. . . . . . 15

        1.    Common Issues Predominate as to Plaintiffs' UCL Claims. . . . . . . 16

        2.    WMMSC's and RFC's Liability for Aiding and Abetting is Subject to Common Proof. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        3.    Restitution Can Be Computed in a Uniform Manner. . . . . . . . . . . . 22

        4.    The Class Action Mechanism is Superior . . . . . . . . . . . . . . . . . . . . 25

1

IV.    CONCLUSION    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Motion for Class Certification - 8:11-cv-0079-JST (RNBx)

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Aho v. Americredit Fin. Servs.. Inc.*
—F.R.D—, 2011 WL 5401799 (S.D. Cal. Nov. 8, 2011) . . . . . . . . . . . . . . . . . . 23

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bruno v. Outen Research Inst.. LLC*
—F.R.D—, 2011 WL 5592880 (C.D.Cal. Nov. 14, 2011) . . . . . . . . . . . . . . . 16, 18

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . 25

*Chavez v. Blue Sky Nat. Bev. Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) . . . . . . . . . . . . . . . 23

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . 12

*Ferrington v. McAfee. Inc.*
Case No. 1020 cv 01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) . . . . 24

*Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579 (S.D. Cal. 2010) . . . . . . . . . . . . . . . . . . 13

*Gutierrez v. Wells Fargo Bank. N.A.*
No. C 07-05923 WHA, 2008 WL 4279550 (N.D. Cal., Sept. 11, 2008) . . . . . . . 23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 14, 15

*In re Ferrero Litig.*, – F.R.D. –, 2011 WL 5557407 (S.D. Cal. Nov. 15, 2011) . . . . . . . . 18

*In re VisaCheck/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) . . . . . . . . 25

*Jenson v. Fiserv Trust Co.*, 256 Fed. Appx. 924 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . 22

*Johnson v. Gen. Mills. Inc.*
---F.R.D. ---, 2011 WL 4056208 (C.D. Cal. Sept. 12, 2011) . . . . . . . . . . . . . . . . 22

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) . . . . . . . . . . . . . . 15

*Lozano v. AT&T Wireless Serv's, Inc.*, 504 F.3d 718 (9th Cir. 2007) . . . . . . . . . . . . . . . 20

*Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534 (N.D. Cal. 2010) . . . . . . . . . . *passim*

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482 (C.D. Cal. 2006) . . . . . . . . . . 12

*Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149 (C.D. Cal. 2011) . . . . . 19, 20

*Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437 (N.D. Cal. 2009) . . . . . . . . . . . *passim*

*Plascencia v. Lending 1st Mortg.*, 2011 WL 5914278 (N.D. Cal. Nov. 28, 2011) . . . . . . . 2

*Ralston v. Mortgage Investors Group, Inc.*No. 5:08-cv-00536-JF (PSG), 2012 WL 1094633 (N.D. Cal. March 30, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . 16, 19

*Schramm v. JPMorgan Chase, N.A.*, No. LA CV 09-09442,
   2011 WL 5034663 (C.D. Cal. Oct. 19, 2011) . . . . . . . . . . . . . . . . . . . . . . . . 3, 16, 17

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) . . . . . . . . 13, 16, 17, 18, 22

*Tourgeman v. Collins Financial*
   No. 08-CV-1392 JLS, 2011 WL 5025152 (S.D. Cal. Oct. 21, 2011) . . . . . . . . . . 22

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) . . . . . . . . . . . 14

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2009) . . . . . . . . *passim*

**STATE CASES**

*Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230 (2011) . . . . . . . . . . . 2, 18, 19

*Camacho v. Automobile Club of So. Cal.*, 142 Cal. App. 4th 1394 (2006) . . . . . . . . . . . 19

*Cel-Tech Comm's, Inc. v. Los Angeles Cell. Tel. Co.*, 20 Cal. 4th 163 (1999) . . . . . . . . 19

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 180 (2000) . . . . . . . . . . . 22

*Day v. AT&T Corp.*, 63 Cal. App. 4th 325 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845 (2002) . . . . . . . . . . . . . . . . . . . . . . 19

*In re Tobacco II Cases*, 46 Cal. 4th 298, 207 P.3d 20 (2009) . . . . . . . . . . . . . . . . . *passim*

*Klein v. Chevron U.S.A., Inc.*, --- Cal.Rptr.3d —, 2012 WL 206615 (2012) . . . . . . . . . . 23

*Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86 (2007) . . . . . . . . . . . . . . . . . . . . . . . 20

*Scripps Clinic v. Superior Ct.*, 108 Cal. App. 4th 917 (2003) . . . . . . . . . . . . . . . . . . . . 19

**FEDERAL RULES**

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Cal. Bus. & Prof. Code § 17203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cal. Bus. & Prof. Code § 17204. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

iv

Haw. Rev. Stat. § 480-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**TREATISES**

2 NEWBERG ON CLASS ACTIONS § 4:25 (4th ed.)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs' Motion for Class Certification - 8:11-cv-0079-JST (RNBx)

# I.   **INTRODUCTION**

This class action arises from a uniformly deceptive set of mortgage loan documents that Defendants Washington Mutual Mortgage Securities Corp. ("WMMSC"), WaMu Asset Acceptance Corp. ("WAAC," and collectively with WMMSC, "WaMu"), and Residential Funding Company, LLC ("RFC") (collectively, "Defendants") used to generate, acquire, and/or securitize large volumes of Option Adjustable Rate Mortgage ("Option ARM") loans. WaMu and RFC's approved loan originators, including Defendant BrooksAmerica Mortgage Corporation ("BrooksAmerica"), used uniform adjustable rate mortgage Notes ("Notes") to originate these loans.  Defendants agreed to purchase the loans from the approved lenders in advance of closing, and eventually acquired every Class member's loan after it closed. WaMu and RFC then pooled and securitized the loans, yielding them large profits.

These Option ARM loans posed unique risks to borrowers, which any reasonable borrower would find material when choosing a mortgage loan, but which the approved originators' loan documents did not disclose.  The material facts omitted from the loan documents included that (1) the monthly payment in the Note is based upon a low "teaser" interest rate – typically one to two percent – that only applies to the loan for *one month*; (2) the payment schedule listed in the Truth In Lending Disclosure Statement ("TILDS") for the first *three to five years* of the loan is based on this same teaser rate; (3) the interest rate that Defendants actually charge after the first month is the sum of an "index" and a "margin," which is always far higher than the teaser rate upon which the monthly payment amount is based; and (4) because of the foregoing, the monthly payments for the first three to five years of the loan are far less than the accrued interest alone, so that the difference each month is *added* to the loan's principal balance ("negative amortization").

Plaintiffs allege that the class-wide use of Notes and TILDSs (collectively, the "Loan Documents") that withheld this basic material information is an "unlawful," "fraudulent," and/or "unfair" business practice in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL").  As the California Court of Appeal recently held in a similar case challenging the use of such deceptive loan documents:

---

1

... we see no countervailing value in defendant's practice of providing general, byzantine descriptions of Option ARMs, with no clear disclosures explaining that, with regard to plaintiffs' particular loans, negative amortization would certainly occur if payments were made according to the payment schedule. To the contrary, a compelling argument can be made that lenders should be discouraged from competing by offering misleading teaser rates and low scheduled initial payments (rather than competing with regard to low effective interest rates, low fees, and economically sustainable payment schedules).

*Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 254 (2011) (reversing dismissal of UCL and fraud claims).

Liability under the UCL will turn on the face of the uniform Loan Documents, which were presented to all Class members before contracting, making this case ideally suited for class action treatment.[2]  This is precisely what three Northern District of California Judges have found in certifying classes of Option ARM borrowers who asserted UCL and related claims challenging identical loan provisions:

- *Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437 (N.D. Cal. 2009) (certifying borrower class asserting UCL and other claims against originator and subsequent purchaser of Option ARM loans based on material omissions in uniform loan documents)[3];

- *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534 (N.D. Cal. 2010) (same, claims only against Option ARM originator);

- *Ralston v. Mortgage Investors Group, Inc.*, No. 5:08-cv-00536-JF (PSG), 2012 WL 1094633 (N.D. Cal. March 30, 2012) (certifying borrower class asserting UCL claims against Option ARM originator and subsequent purchaser).

The Ninth Circuit agrees, holding that consumer fraud claims based on common standard-form documents are ideally suited for class certification.  *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2009) (reversing denial of class certification

---

[2] Plaintiffs seek to certify only their UCL claim, and not their common law fraud claim.

[3] *See also Plascencia v. Lending 1st Mortg.*, 2011 WL 5914278, at *1-2 (N.D. Cal. Nov. 28, 2011) (clarifying prior class certification order).

Plaintiffs' Motion for Class Certification - 8:11-cv-0079-JST (RNBx)

where plaintiffs based lawsuit on omissions in standardized written forms).  This Court also recently certified a similar case involving standardized Option ARM loan documents.  *See Schramm v. JPMorgan Chase, N.A.*, No. LA CV 09-09442, 2011 WL 5034663, *4 and *13 (C.D.Cal. Oct. 19, 2011) (certifying UCL claim based on standardized loan documents, citing *Yokoyama*).  As in all of these cases, the claims alleged here can be decided on the face of the standardized Loan Documents, are the same for all Class members, and thus present common issues of law and fact that predominate Plaintiffs' and the Class's claims.

Accordingly, Plaintiffs seek to certify pursuant to Fed. R. Civ. P. 23(a) and (b)(3) the following Classes and Subclasses:

a.  <u>Proposed RFC Class</u>:

All individuals who obtained an Option ARM Loan from January 16, 2004 through the date that notice is mailed to the Class, which loan (1) was acquired by Residential Funding Company, LLC ("RFC") by paying all or part of the sale price to the lender that maintained the originating entity's line of credit; (2) was secured by real property in the State of California; (3) was not originated by a national bank, federal savings association, or an affiliate, division, subdivision, predecessor, or parent of RFC; and (4) had the following characteristics: (a) the "Interest Rate" paragraph of the Note (¶ 2) states both (i) a "yearly" Interest Rate that is less than the index plus the margin; and (ii) that the Interest Rate "may" rather than "will" change; (b) the "Initial Monthly Payment" listed in the Note is based upon the yearly interest rate listed in paragraph 2; and (c) the Note does not contain any statement that after the first Interest Rate Change Date, paying the amount listed as the "Initial Monthly Payment" 'will' result in negative amortization or deferred interest.  Excluded from this Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives, located in the United States of America.

b.  <u>Proposed BrooksAmerica-RFC Subclass</u>:

All RFC Class members whose Option ARM loans were originated by BrooksAmerica Mortgage Corporation.

c.  <u>Proposed WaMu Class</u>:

All individuals who obtained an Option ARM Loan from January 16, 2004 through the date that notice is mailed to the Class, which loan (1) was acquired by Washington Mutual Mortgage Securities Corp. ("WMMSC") or WaMu Asset Acceptance Corp. ("WAAC") by paying all or part of the sale price to the lender that maintained the originating entity's line of credit; (2) was secured by real property in the State of California; (3) was not originated by a national bank, federal savings association, or an affiliate, division, subdivision, predecessor, or parent of WMMSC or WAAC; and (4) had the following characteristics: (a) the "Interest Rate" paragraph of the Note (¶ 2) states both (i) a "yearly" Interest Rate that is less than the index plus the margin; and (ii) that the Interest Rate

"may" rather than "will" change; (b) the "Initial Monthly Payment" listed in the Note is based upon the yearly interest rate listed in paragraph 2; and (c) the Note does not contain any statement that after the first Interest Rate Change Date, paying the amount listed as the "Initial Monthly Payment" 'will" result in negative amortization or deferred interest. Excluded from this Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives, located in the United States of America.

d.   Proposed BrooksAmerica-WaMu Subclass:

All WaMU Class members whose Option ARM loans were originated by BrooksAmerica Mortgage Corporation.

## II.   STATEMENT OF FACTS

### A.   The Uniformly Deceptive Loan Documents

The Option ARM loans at issue all have the common characteristics set forth above. First Amended Class Action Complaint ("FAC") ¶19. The Loan Documents did not disclose that, by making the payments identified as borrowers' obligations in their Notes and in the TILDS's payment schedule, Plaintiffs and Class members were certain to incur substantial negative amortization due to the large difference between the teaser interest rate upon which the payment amounts were based (described in the Notes as the "yearly rate," even though it was guaranteed to sharply increase after only one month) and the much higher interest rate actually charged. FAC ¶¶20-23. The omitted information was material. Any reasonable borrower would want to know a loan's true cost (its applicable interest rate) and whether the monthly payments set forth in the loan documents were sufficient to cover all of the interest accruing on the loan. Any borrower would reasonably expect to find such information in their Loan Documents. By withholding this material information, the Loan Documents were deceptive because they were likely to mislead borrowers about the true costs and terms of their mortgage loans. FAC ¶¶33-38.[4]

Plaintiffs and Class members paid higher interest rates than the Loan Documents disclosed, their principal balances increased as they made their scheduled monthly payments

---

[4] As most issues on this motion are identical for members of the RFC Class and the WaMu Class, the members of those Classes are referred to collectively as "Class members".

(in the only payment amounts listed in their Loan Documents), and they had to pay still more interest on the amounts added to their principal balances.  FAC ¶¶93, 98, 100-103.

**B.**  **The Mortgage Banker Business Model Depended on the Assistance of Loan Purchasers Like WMMSC and RFC**

*See* Declaration of Jeffrey K. Berns in Support of Plaintiffs' Motion for Class Certification ("Berns Decl."), Ex. 38-Expert Declaration of Dale Kurland in Support of Plaintiffs' Motion for Class Certification ("Kurland Decl."), ¶¶6,10-11.

Kurland Decl. ¶¶10-11.  The mortgage banker's lending capacity is measured by the availability of its warehouse line. Each warehouse line provides a finite amount of credit.  Once an originator uses up its line of credit, it has no more money to lend to prospective borrowers until the warehouse line is paid down.

. Kurland Decl. ¶¶10-11.

Plaintiffs' Motion for Class Certification - 8:11-cv-0079-JST (RNBx)

1  ██████████████████████████████████████████████████████████████

2  ████████████████████████        Kurland Decl. ¶10.

3       In addition to the uniform Loan Documents, the foregoing uniform relationships

4  between RFC or WMMSC and the mortgage bankers that originated Option ARM loans for

5  sale to them make this case ideal for class certification.

6       **C.    BrooksAmerica Was a Typical Loan Originator for WMMSC and RFC**

7       BrooksAmerica only originated option ARM loans because it knew it could sell them

8  to purchasers like WMMSC and RFC:

9  ███████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████████████

12 █████████████████

13 Berns  Decl.,  Ex.  26  pp.  71:19-72:2.  ██████████████████████████

14 ██████████████████████████████████████████████████████████████

15 ██████████████████████████████████████████████████████████████

16 ████████████████████████        Berns Decl., Ex. 26 p. 76:4-9.  As BrooksAmerica's Chief

17 Executive Officer explained:  ██████████████████████████████████████

18 ██████████████████████████████████████████████████████████████

19 Berns Decl., Ex. 26 p. 93:22-94:1.

20 ████████████████████████████████████████████████████.  Berns

21 Decl., Ex. 26 p. 145:1-9.  ████████████████████████████████████████

22 ████████████████████        Berns Decl., Ex. 26 p. 145:10-18.  Brooks only originated loans

23 that it knew it could resell because it did not have direct access to capital markets to securitize

24 mortgages and retain servicing rights on the product.  ███████████████████

25 ██████████████████████████████████████████████████████████████

26 ████████████████        Berns Decl., Ex. 26 pp. 145:19-146:14.  █████████████

27 █████████████████████████████████████████        Berns Decl., Ex.

28 26 pp. 146:15-22.

Berns Decl., Ex. 26 pp. 149:11-150:23.

. Berns Decl., Ex. 26 p. 153:8-24.

. Berns Decl., Ex. 26 pp. 165:7-166:3.

Berns Decl., Ex. 38-Kurland Decl. ¶¶11-14.

. Kurland Decl. ¶12; *see also* Berns Decl., Ex. 26 p. 145:10-18.

Kurland Decl. ¶¶10-11; *see also* Berns Decl., Ex. 26 pp. 145:19-146:14.

. Kurland Decl. ¶¶10-11; *see also* Berns Decl., Ex. 26 p. 153:8-24.   Thus, as with BrooksAmerica, WMMSC and RFC's role as purchaser materially assisted all of the originators encompassed within the class in their ability to originate the Class members' Option ARM loans.

**D.** **WMMSC's Role in Aiding and Abetting BrooksAmerica and the Other Originators**

Berns Decl., Ex. 17 p. 11:9-15.

. Berns Decl., Ex. 17 p. 21:15-18.

Berns Decl., Ex. 17 pp. 21:20-22:3.

Plaintiffs' Motion for Class Certification - 8:11-cv-0079-JST (RNBx)

1

2      ██████████████████████.  Berns Decl., Ex. 18.  ████████████████

3      ████████████████████████████████████████████████████████████

4      ████████████████████████████████████████████████████████████

5      ████████████████████  Berns Decl., Ex. 17 pp. 29:9-30:18.

6      ████████████████████████████████████████████████████████████

7      ████████████████████████████████████████████████████████████

8      ███████████████████████.  Berns Decl., Ex. 19.  ██████████████

9      ████████████████████████████████████████████████████████████

10     ███████████████████████████████████████████  Berns Decl., Ex. 19, §§ 501 and

11     601 (██████████████████████████████████████████████████████████

12     ████████████████████████████████████████████████████████████

13     ██████████████████).

14     ████████████████████████████████████████████████████████████

15     ████████████████████████████████████████████████████████████

16     ██████████████████████████████████████████████.  *See* Berns

17     Decl. ¶1 and Ex's. 1-12, 20-23, 30-34.  Like the BrooksAmerica Note forms, the Notes used

18     by each of these other originators were on a form identified as "FE-5312."

19           This identity of forms also applied to WMMSC's contracts with BrooksAmerica.  ███

20     ████████████████████████████████████████████████████████████

21     ████████████████████████████████████████████████████████████

22     ██████████████████  Berns Decl., Ex. 17 p. 75:20-23; Ex. 24.  ████████████

23     ████████████████████████████████████████████████████████████

24     ████████████████████████████████████████████████████████████

25     ██████████  Berns Decl., Ex. 17 p. 83:18-21; Ex. 25.  ██████████████

26     ████████████████████████████████████████████████████████████

27     ████████████  Berns Decl., Ex. 17 pp. 88:13-89:8.  ████████████████

28

Plaintiffs' Motion for Class Certification - 8:11-cv-0079-JST (RNBx)

1   ███████████████████████████████████████████████████████████████████████.

2   Berns Decl., Ex. 17 p. 100:8-22.

3       **E.      RFC's Role in Aiding and Abetting BrooksAmerica and the Other**

4               **Originators**

5       RFC entered into Seller/Servicer Agreement contracts with BrooksAmerica and other

6   originators.   RFC required originators to comply with its underwriting guidelines and

7   specified on its website the forms of loan documents it required to purchase Option ARMs.

8   ███████████████████████████████████████████████████████

9   ████████████████████.   Berns Decl., Ex. 27, pp. 59:9-13, 60:12-15.   ██████████████████

10  ██████████████████████████████████████████████████████████████████████

11  █████████.   Berns Decl. Ex. 28, p. 966.   █████████████████████████████

12  █████████████████████████████████████   Berns Decl., Ex. 27 pp. 84:1-13, 86:1-20;

13  Ex. 29 pp. 10843-44; Ex. 35 p.8774.[5]

14  ██████████████████████████████████████████████████████████

15  ███████████████████████   Berns Decl., Ex. 13 p. 10:2-18.   ██████████████████████

16  ██████████████████████████████████████████████████████████████████████

17  ██████████████████████   *See* Berns Decl., Ex. 37 (RFC-approved originator list).   ██████████

18  ██████████████████████████████████████████████████████████████████████

19  ██████████████████████████   Berns Decl., ¶2 and Ex's. 1-12.   Moreover, Plaintiffs here provide

20  numerous examples of Option ARM loans made by other approved originators using FE 5312

21  notes.   Declaration of Lee A. Weiss in Support of Plaintiffs' Motion for Class Certification

22  ("Weiss Decl."), ¶¶3-8 and Ex's 4-39.   ███████████████████████████████

23  ██████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████.   Berns Decl.,

25  ¶2 and Ex's 1-12.

26

27  ────────────────────

28  [5] RFC is also known as "GMAC-RFC," and its website was "gmacresidentialfunding.com."

1 ████████████████████████████████████████

2 ██████████████████████████████████████. Berns Decl.,

3 Ex. 13 pp. 35:22-36:12. ███████████████████████

4 ███████████████████████ Berns Decl., Ex. 13 pp. 46:19-47:4; Ex. 16. ██

5 ████████████████████████████████████████

6 █████████████████ Berns Decl., Ex. 13 p. 105:2-17; Ex's 14 and 16. ████

7 ████████████████████████████████████████

8 █████████████ Berns Decl., Ex. 13 pp. 62:23-63:6, 65:10-15; Ex. 15.[6] ████

9 ████████████████████████████████████████

10 ████████████████████████████████████████

11 ███████████████ Berns Decl., Ex. 13 p. 67:1-5.  These requirements included RFC's

12 approval of the Option ARM loan documents. ██████████████████

13 ████████████████████████████████████████

14 ██████████████. Berns Decl., Ex. 13 pp. 70:2-18, 131:10-132:17.[7]

15 ████████████████████████████████████████

16 ████████████████████████████████████████

17 ████████████████████████████████. Berns Decl.,

18 Ex. 27 pp. 37:8-14, 41:7-18. ████████████████████

19 ████████████████████████████████████████

20 ████████████████████████████████████████

21 ████ Berns Decl., Ex. 27 p. 46:3-15. ████████████████

22 ████████████████████████████████████████

23 ████████████████████████████. Berns Decl., Ex. 27 pp. 50:8-24, 52:15-

24 54:22.

25 _____

26 [6] ████████████████████████████████████

27 ████████████ Berns Decl., Ex. 15 p. 609. ████████████

28 [7] ██████ Berns Decl., Ex. 17 pp. 26:5-27:3. ████████████

Plaintiffs' Motion for Class Certification - 8:11-cv-0079-JST (RNBx)

**F.**   **RFC and WMMSC Materially Assisted Option ARM Originators by Agreeing in Advance to Purchase Their Loans, Approving Their Loan Documents, and Paying Their Warehouse Lenders**



. Berns Decl., Ex. 38-Kurland Decl., ¶10.

Berns Decl., Ex. 13 pp. 21:8-22:22.

Berns Decl., Ex. 17 pp. 44:2-45:11.   Both Defendants thus assisted BrooksAmerica and other originators by providing the commitments needed to fund their loans.[8]  Absent these commitments, the originators would not have been able to originate Option ARM loans.

## III.   STANDARDS ON CLASS CERTIFICATION

A plaintiff seeking to represent a class must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims and defenses of the representative parties are typical of the claims or defenses of the class; and (4) the respective parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

A moving party also must satisfy at least one of the requirements of Rule 23(b). Where, as here, the claims primarily seek money damages, Rule 23(b)(3) requires the plaintiff to demonstrate that "the questions of law or fact common to class members predominate over

---

[8] Any Option ARM loans that Defendants *did not* acquire in this fashion, *i.e.* Defendants did not pay off a warehouse lender of the originator in whole or in part, are excluded from the Class definition.  Since this determination can be made by reference to Defendants' financial records of payments made to warehouse lenders on behalf of originators, this element of the Class definition like all the others is determinable based on objective and identifiable criteria.

1    any questions affecting only individual members, and that a class action is superior to other

2    available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

3    23(b)(3).

4        A court may make some inquiry into the facts on the merits to determine if the

5    requirements of Rule 23 are met.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52

6    (2011).  But a court should not resolve any merits issues in making these pre-trial

7    determinations.  *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 983 n. 8  (9th Cir. 2011).

8    **IV.    ARGUMENT**

9        **A.    This Case is Ideally Suited for Class Treatment.**

10       Where, as here, many people have been harmed by a common scheme perpetrated

11   through the use of uniform documents, class treatment is appropriate.  *See*, *e.g.*, *Yokoyama*,

12   594 F.3d at 1093 ("These plaintiffs based their lawsuit only on what Midland did not disclose

13   to them in its forms.  The jury will . . . have to determine only whether those omissions were

14   likely to deceive a reasonable person.  This does not involve an individualized inquiry.");

15   *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 491 (C.D. Cal. 2006) (finding

16   predominance of common issues arising from defendant's "common, uniform sales marketing

17   materials" with common omission).

18       In a virtually identical case, the Northern District of California certified the plaintiffs'

19   UCL and common law fraud claims based on its finding that common issues predominated

20   because the plaintiffs could prove liability with "generalized evidence."  *Plascencia*, 259

21   F.R.D. at 448.  The court further held that, under the California Supreme Court's holding in

22   *In re Tobacco II Cases*, 46 Cal. 4th 298, 207 P.3d 20 (2009), only the named plaintiffs -- and

23   not absent class members – needed to show actual reliance to support their UCL claims, and

24   that the named plaintiffs had done so.  259 F.R.D. at 448-49.

25       Similarly, in another class action involving the same UCL claim and deceptive Option

26   ARM loan documents, the Northern District of California recently certified a class because

27   the plaintiff's UCL allegations centered on "virtually identical" loan documents that "were

28   likely to deceive the public ..." rejecting defendants' argument "that each class member was

exposed to different information from brokers and other sources," *See Ralston v. Mortgage Investors Group, Inc.*, 5:08-cv-00536-JF (PSG), 2012 WL 629238, *10 (N.D. Cal. Feb. 27, 2012).[9] Thus, as in *Plascencia* and *Ralston*, since the material omissions and representations in all of the Loan Documents here are common and uniform, the Class will be able to establish Defendants' liability through common proof.

### B.   Rule 23(a)'s Requirements are Satisfied

#### 1.   The Classes Are Sufficiently Numerous and Readily Ascertainable

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As few as forty class members may suffice. *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 588 (S.D. Cal. 2010). Here, the proposed Classes of California property owners whose Option ARM loans were acquired by RFC or WaMu are more than sufficiently numerous. ████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████. *See* Berns Decl., Ex. 37 (Response 1); Weiss Decl., Ex. 45 (Response 2). Rule 23(a)(1)'s numerosity requirement is satisfied as to the Classes and Sub-Classes.

#### 2.   There Are Questions of Law and Fact Common to the Class

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requires that class members' claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution." *Wal-Mart*, 131 S. Ct. at 2551. "[E]ven a single question will do." *Id.* at 2556 (citation omitted).

In addressing Option ARM borrowers' claims based on uniform loan documents in *Plascencia*, *supra*, the Northern District held that the "class members' claims clearly have

---

[9] In the cited opinion, the *Ralston* court tentatively concluded "that class treatment of the UCL claim may be appropriate under *Stearns* [*v. Ticketmaster, Inc.*, 655 F.3d 1013 (9th Cir. 2011)]" (*Ralston*, 2012 WL 629238, *10), and then sought further briefing concerning the ability of Plaintiff to prove and quantify UCL restitution on a classwide basis. *Id.* at *11. After reviewing the supplemental briefing and conducting additional oral argument, the *Ralston* court reaffirmed that the UCL claim was appropriate for class treatment and certified the class because Plaintiff had sufficiently addressed the Court's issue concerning classwide restitution. *See Ralston*, 2012 WL 1094633, at *2.

something in common: all class members purchased an [Option] ARM from Lending 1st, and their claims are based on a common theory of liability." 259 F.R.D. at 443; *see also Ralston*, 2012 WL 629238 at *6 (common questions include "whether the class members' loan documents contained identical or nearly identical terms; whether those terms failed to disclose that borrowers were certain to incur negative amortization by making the payment amounts specified in the Note and TILDS; whether Defendants knew that the loan documents were false and misleading; and whether the loan documents were likely to deceive members of the public").   The same is true here – all Class members entered into an Option ARM loan with the same or substantially the same Loan Documents, and all of their claims are based on the same liability theories.   Core common issues capable of classwide resolution include:

    a.    Whether the Loan Documents failed to disclose the true cost (i.e., interest rate) of the Option ARM loans;

    b.    Whether the Loan Documents failed to disclose that borrowers were certain to incur negative amortization by making the payment amounts specified in the Note and TILDS;

    c.    Whether the use of the Loan Documents was unfair or fraudulent, *i.e.* likely to deceive members of the public, under the UCL; and

    d.    Whether RFC and/or WaMu are liable for aiding and abetting the subject UCL violations by agreeing in advance to purchase Option ARM loans originated with the approved deceptive forms.

These common questions of law and fact satisfy Rule 23(a)(2)'s requirements.

### 3.     <u>Plaintiffs' Claims are Typical of Class Members' Claims.</u>

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).   "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).   As some degree of individuality is expected in all cases, this alone does not defeat typicality. *See*, *e.g.*, *Wolin v. Jaguar Land*

Plaintiffs' Motion for Class Certification - 8:11-cv-0079-JST (RNBx)

*Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (finding typicality despite differences in factual circumstances and available remedies; citing *Lymburner*, 263 F.R.D. at 540, with approval).

Where, as here, the named Plaintiffs' claims are based on the same documents that Class members received, their claims are "reasonably co-extensive" with the class. *See Plascencia*, 259 F.R.D. at 444 ("Plaintiffs' claims are all based on loans issued by Lending 1st without proper disclosures"); *Ralston*, 2012 WL 629238, *7 (same); *Lymburner*, 263 F.R.D. at 540 (same). Here, since Defendants will not be able to "point[] to any evidence showing that [their] conduct was unique to Plaintiff[s], or that the loan documents were materially different for certain class members" *(id.)*, Plaintiffs' claims are typical of the Class (and the BrooksAmerica Subclasses) in satisfaction of Rule 23(a)(3).

### 4.   Plaintiffs Are Adequate Representatives

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires that the proposed representatives (1) have no conflicts with the proposed class; and (ii) be represented by qualified and competent counsel. *See*, *e.g.*, *Hanlon*, 150 F.3d at 1020.

The first factor – that there be no conflict of interest – does not require complete uniformity of interests, but only that "the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Where, as here, the claims of Class members and the named Plaintiffs are virtually coextensive, there is no conflict.

Second, proposed Class Counsel are adequate, as they all have substantial experience in complex class action litigation. *See* Weiss Decl., Ex's 46-49; *see also Plascencia*, 259 F.R.D. at 445 (finding substantially same group of lawyers adequate).

### C.   The Proposed Class Satisfies All of Rule 23(b)(3)'s Requirements

Plaintiffs seek certification pursuant to Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for

1   fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Predominance
2   is not a numerical test;  a "single common issue may be the overriding one in the litigation,
3   despite the fact that the suit also entails numerous remaining individual questions."  2
4   NEWBERG ON CLASS ACTIONS § 4:25 (4th ed.).  Here, as in *Plascencia*, *Ralston*, *Lymburner*,
5   *Schramm* and *Yokoyama*, Plaintiffs satisfy the Rule's requirements as to each of their claims.

### 1.   Common Issues Predominate as to Plaintiffs' UCL Claims

7       To prevail under the UCL's "fraudulent" prong, Plaintiffs need only prove that the
8   common and uniform omissions were material and "likely to deceive the public."  *In re*
9   *Tobacco II Cases*, 46 Cal. 4th at 326-28.  *See also Ralston*, 2012 WL 629238, *10 (citing
10  *Stearns*, 655 F.3d at 1020, and stating "[w]ith respect to Ralston's UCL claim, the primary
11  inquiry is whether Defendants' conduct was likely to deceive the public").  Relief is
12  "available without individualized proof of deception, reliance and injury." *Id.* at 320; *Stearns*
13  *v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (quoting *Tobacco II*); *Bruno v.*
14  *Quten Research Inst.*, *LLC*, — F.R.D. —, 2011 WL 5592880, *9 (C.D. Cal. Nov. 14, 2011)
15  (certifying UCL class).  Because materiality is judged by a reasonable person standard (*Rubio*
16  *v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010)), this objective standard is
17  amenable to adjudication through common proof.  *See*, *e.g.*, *Lymburner*, 263 F.R.D. at 543
18  ("common issues will predominate on the UCL claims.").

19      As the Ninth Circuit recently reaffirmed, claims based upon uniform written
20  disclosures that are "likely to mislead" the public are necessarily subject to common proof
21  and thus merit class certification.  *Yokoyama*, 594 F.3d at 1093 (noting that the plaintiffs had
22  "crafted their lawsuit so as to avoid individual variance among the class members.").[10]  In the
23  context of class claims based upon omissions in uniform documents, individual inquiries into

---

[10] The Hawaii Deceptive Practices Act, Haw. Rev. § 480-2, at issue in *Yokoyama*, like the
UCL, prohibits (1) a representation, omission or practice that (2) is likely to mislead
consumers acting reasonably under the circumstances where (3) the representation, omission
or practice is material.  "Actual deception need not be shown, the capacity to deceive is
sufficient." *Yokoyama*, 594 F.3d at 1087; *see also Stearns*, 655 F.3d at 1020 ("To state a
claim under . . . the UCL . . . based on false advertising or promotional practices, it is
necessary only to show that members of the public are likely to be deceived.") (quoting
*Tobacco II*, 46 Cal. 4th at 312).

what third parties (such as mortgage brokers) might have conveyed to borrowers are irrelevant to a UCL claim for the same reasons set forth by the Ninth Circuit in *Yokoyama*:

> Plaintiffs' case will not require the fact finder to parse what oral representations each broker made to each plaintiff. Instead, the fact-finder will focus on the standardized written materials given to all plaintiffs and determine whether those materials are likely to mislead consumers acting reasonably under the circumstances.

*Id.* The same holds true here, as Plaintiffs' UCL claims rest solely upon the deficient Loan Documents, and thus do not involve any written or oral representations made by any third party. Indeed, what any third party may have done is irrelevant under the UCL, which focuses on the culpability of the *defendant*'s conduct - here, utilizing misleading Loan Documents - not the acts of non-parties. *Tobacco II*, 46 Cal.4th at 320.

To establish class-wide liability under the UCL, class members need not demonstrate reliance, causation and injury. *See Stearns*, 655 F.3d at 1020-21 ("[I]t need not be shown that class members have suffered actual injury in fact connected to the conduct of the [defendants]."); *Tobacco II*, 46 Cal. 4th at 324. Only the named plaintiff in a UCL case must demonstrate standing - i.e., loss of money or property resulting from the challenged practice. To effectuate the UCL's broad purpose to protect the public, this requirement is liberally construed. "It is not necessary that the plaintiff's reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing his conduct." *Plascencia*, 259 F.R.D at 448. Rather, "[i]t is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision." *Tobacco II*, 46 Cal.4th at 326-27.

Here, Plaintiffs read the key terms of the Loan Documents and relied on the omitted facts in entering into their loans, not learning the true facts until after closing. *See* Weiss Decl., Ex. 40 pp. 33-40; Ex. 41 pp. 41-78; Ex. 42 pp. 30-33, 82-83, 95-96; Ex. 43 pp. 17-18, 22, 32-34; Ex. 44 pp. 62-65, 86-92. Plaintiffs thus have standing, and because liability under the UCL focuses not on class members but rather on Defendants' conduct related to the use of uniform Loan Documents, class certification is proper. *See, e.g., Schramm*, 2011 WL 5034663, *5 ("Individual inquiries into potential class members' knowledge of, or reliance

on, the defendant's actions are not required. Accordingly, Defendants' contentions as to the need for individual analyses as to each class member are unpersuasive. Instead, the inquiry at trial will be whether or not the representations made by Defendants were likely to deceive a reasonable borrower.").

Nevertheless, Defendants likely will proffer irrelevant expert testimony to suggest that individual Class members may have chosen to enter into Option ARM loans for a variety of reasons, and that the loans themselves may be appropriate for some borrowers. But this case challenges the class-wide practice of utilizing deceptive loan documents, not the suitability of the loans themselves. As the Ninth Circuit held in *Stearns*: "One might say that, in effect, California has created what amounts to a conclusive presumption that when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury; restitution is the remedy." *Stearns*, 655 F.3d at 1021, n. 13. Here, all Class members were provided with uniform loan documents that fail to clearly disclose the true nature of the loans. All Class members received and executed these loan documents and thus were exposed to the practice challenged here. No evidence exists that *any* Class members were reeled in without the use of the tainted bait challenged by Plaintiff. Whether some borrowers may have "bit" for personal reasons in addition to the tainted bait is <u>irrelevant</u>, because the UCL focuses on *Defendants*' class-wide conduct. *Tobacco II*, 46 Cal. 4th at 320; *Boschma v. Home Loan Center, Inc.*, 198 Cal.App.4th 230, 252 (2011) (upholding UCL claim based on allegations addressed solely to face of Option ARM loan documents).[11]

Plaintiffs' claim under the "unfair" prong of the UCL is equally amenable to class-wide proof. The "unfairness" test this Court applied at the pleading stage focuses on whether the challenged practice presents a "substantial injury" that outweighs any "countervailing

---

[11] *See also In re Ferrero Litig.*, – F.R.D. –, 2011 WL 5557407, *6 (S.D. Cal. Nov. 15, 2011) (granting certification, rejecting defense argument that UCL claim implicated class members' individual expectations, knowledge and preferences); *Bruno v. Quten Research Institute*, ---- F.R.D., 2011 WL 5592880, *11 (C.D. Cal. Nov. 14, 2011) (granting class certification, noting that UCL "focuses on the Defendants' representations about the product and applies a single, objective 'reasonable consumer' standard - not, as Defendants urge, a subjective test that inquires into each class member's experience with the product." (citations omitted).)

benefits" and could not "reasonably have been avoided." *Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149,1165 (C.D. Cal. 2011); *see also Camacho v. Automobile Club of So. Cal.*, 142 Cal. App. 4th 1394, 1403-05 (2006); *Boschma*, 198 Cal. App. 4th at 254 (upholding UCL unfair prong claim based on Option ARM loan documents). Depriving borrowers of key information in the form documents where one would expect to find it impairs their ability to shop for credit fairly and, in this case, also results in an undisclosed loss of equity. *See, e.g., Rubio*, 613 F.3d at 1205 (reversing dismissal of "unfair" prong claim, noting that the plaintiff might be able to show "that removing the term 'fixed,' an action that would have cost [defendant] nothing, could have prevented consumer confusion."). These claims thus present common issues based on the uniform costs and lack of benefit of Defendants' uniform loan documents.[12]

Another test holds that an "unfair" practice under the UCL is one whose harm to the victim outweighs its benefits. *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 331-32 (1998). Here, the harm of not disclosing the loan's true cost and the cost's effect on the amount owed outweighs any alleged benefit from an illusory low payment amount that bears no relation to what is actually owed. *See* FAC ¶96. The third "unfair" test also implicates no individuated issues, as it simply asks whether the practice at issue violates public policy tethered to a specific statutory violation, such as TILA. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999); *see also* FAC ¶¶95-97 (alleging unfairness under this test). Some courts have applied the *Cel-Tech* test to "unfairness claims" by consumers. *See, e.g., Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002); *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003) (discussing *Cel-Tech* and *Gregory, supra*); *Boschma*, 198 Cal. App. 4th at 254 (addressing third test in reinstating UCL

---

[12]To the extent Defendants argue that borrowers could "reasonably avoid" lost equity by simply paying far more than the disclosed amounts in their Note and TILDS (at least upon discovering that negative amortization was certain upon making their scheduled payments), this position is readily answered by the response that it would not be reasonable to impose such a bait-and-switch and a far higher than contractually-scheduled loan payment on any borrower. Regardless of who is right, the issue presents a common question.

claim: "Finally, to the extent an "unfair" claim must be 'tethered' to specific statutory or regulatory provisions, TILA and Regulation Z provide an adequate tether even though plaintiffs are not directly relying on federal law to make their claims.").[13]

Thus, the law in California is somewhat uncertain since the California Supreme Court has not yet selected an "unfair" test in the consumer context.  *See Lozano v. AT&T Wireless Services, Inc*., 504 F.3d 718, 732, 736 (9th Cir. 2007) (discussing the three "unfair" tests and affirming class certification under balancing test in case involving uniform disclosures to all customers, alleging "unfair" conduct because defendant "did not fully and adequately disclose its billing practices at the time customers contracted with it to obtain cellular services").  Here, however, whether Defendants acted "unfairly" can be resolved with common proof under *any* of the three tests in view of the challenged practice at issue.

### 2.   WMMSC's and RFC's Liability for Aiding and Abetting is Subject to Common Proof

Under California law, "[l]iability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person . . . knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act . . ." *Schulz v. Neovi Data Corp*., 152 Cal. App. 4th 86, 93 (2007); *see also Plascencia*, 583 F. Supp. 2d at 1098 ("Plaintiffs may be able to establish that [the subsequent purchaser] gave [the loan originator] a financial incentive to continue to commit those violations, and therefore may be subjected to liability for aiding and abetting violations of the UCL.").

Defendants' conduct did not materially vary with respect to each Option ARM loan in the proposed Classes.  The substantial assistance and encouragement of WMMSC and RFC for the unlawful, unfair and fraudulent practices at issue, and the financial assistance that those entities provided to BrooksAmerica and other lenders, can be demonstrated by, among other things, the common proof that they approved the forms of loan documents used by all

_____

[13]In its prior motion to dismiss ruling, this Court concluded that the failure to disclose the certainty of negative amortization under the disclosed payment schedule "could be shown to violate TILA's requirements of clear and conspicuous disclosures."  *Peel v. BrooksAmerica Mortg. Corp*. 788 F.Supp.2d 1149,1164 (C.D. Cal. 2011).

of the originators and agreed in advance to purchase and securitize Option ARM loans originated by originators who, like BrooksAmerica, used those forms of loan documents. ███

███████████

██████████████████████████████

███████████████████████████  ███████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████

███████████████████  ██████████████████████

██████████████████████████████████

█████████████████████████████████

█████████████████████████████

Berns Decl., Ex. 38-Kurland Decl., ¶12.

████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████. Kurland Decl.,

¶10.

        Further, Plaintiffs will demonstrate with common proof that Defendants had knowledge that the originators were using deceptive Loan Documents. ████████████████

██████████████████████████████████████████

                  *See*, *e.g.*, Berns Decl., Ex. 17 pp. 29:9-30:18; Ex. 19 p. 178. ████████

██████████████████████████████████████████

████████████████████████████████. *See* Berns Decl., Ex. 27 pp. 74:2-75:12, 76:25-79:7, 84:1-13; Ex. 36 p. 20132.

In sum, WMMSC's and RFC's actual knowledge and substantial assistance of correspondent lenders' UCL violations can be proven (or disproven) with common evidence. *See, e.g., Jenson v. Fiserv Trust Co.*, 256 Fed. Appx. 924, 926 (9th Cir. 2007) (affirming class certification and noting: "Fiserv either knew of Heath's scheme to defraud and took steps substantially to advance the scheme or it didn't. Either way, its knowledge and assistance (if any) predominates as a common issue.").

### 3.   Restitution Can Be Computed in a Uniform Manner

The California Supreme Court has held that: "the language of [UCL] section 17203 with respect to those ***entitled*** to restitution—'to restore to any person in interest any money or property, real or personal, which ***may have been acquired'*** (italics added) by means of the unfair practice—is patently less stringent than the standing requirements for the class representative—'any person who has suffered an injury in fact and has lost money or property ***as a result*** of the unfair competition.' ([Bus. & Prof. Code] § 17204; italics added)." *In re Tobacco Cases II, supra*, 46 Cal. 4th at 320 (emphasis by court in original where noted). The Ninth Circuit echoed this distinction in *Stearns v. Ticketmaster, supra*, finding that a district court abused its discretion in denying class certification of plaintiffs' UCL claims that required ***no*** individual showing of reliance or causation, while finding no such abuse of discretion as to the Consumers Legal Remedies Act, which states that a consumer must be harmed "as a result of" the conduct alleged. 655 F.3d at 1020; *see also Johnson v. Gen. Mills, Inc.*, ---F.R.D. ---, 2011 WL 4056208, at *2 (C.D. Cal. Sept. 12, 2011).[14]

Here, Plaintiffs seek several categories of restitution. Sitting in equity, this Court will exercise its "broad discretion" to determine at trial which types of property interests should be restored and to what degree. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163,

---

[14] *See also Tourgeman v. Collins Financial*, No. 08-CV-1392 JLS, 2011 WL 5025152, *16-17 (S.D. Cal. Oct. 21, 2011) ("Here, the UCL class members necessarily were exposed to the misrepresentation because, by definition, they received a collection letter or lawsuit stating that AIB as [sic] the original creditor for the loan.   Because they were exposed to the misrepresentation, any money that the class members paid to Defendants 'may have been acquired by means of' Defendants' misidentification of the original creditor... Cal. Bus. & Prof. Code § 17203... Because individual inquiry into causation is not necessary, common issues would predominate on the UCL claim").

180 (2000); *see also Klein v. Chevron U.S.A., Inc.*, --- Cal.Rptr.3d —, 2012 WL 206615, *24 (2012) ("If the trial court ultimately determines that Chevron's conduct violates the UCL, it will have broad discretion to formulate an appropriate remedy.").

Plaintiff and Class members are entitled to recover the negative amortization they incurred, the capitalized interest charged on the negative amortization (interest on interest), and any prepayment penalties they paid to escape the loans. For each of these, either a payment was made by the borrower or their property was taken through loss of their equity. In *Ralston*, *supra*, which addressed the same categories of restitution, the court held:

> Because this case still is at the class certification stage, the Court has not made any determination as to what theories of restitution might be permitted at trial, nor does it do so now ... For purposes of class certification, calculation of restitution on a classwide basis appears to be workable.

*Ralston*, 2012 WL 1094633, at *2; *see also Chavez v. Blue Sky Nat. Bev. Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) ("At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time."); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2008 WL 4279550, *1748-49 (N.D. Cal., Sept. 11, 2008 ) (holding that it is sufficient that "a program could be written and applied against a bank's database" to determine which customers had been overcharged, and that "software will be designable to extract the vital elements needed to assess damages and causation") (emphasis added).

Because amounts taken from Class members can be determined through accepted mathematical analyses of data from Defendants' records (or records of mortgage servicers or public sources), class certification is proper. *See Aho v. Americredit Fin. Servs., Inc.*, ---F.R.D—, 2011 WL 5401799, at *13 (S.D. Cal. Nov. 8, 2011) ("If liability is proven, proof of restitution due each class member can be proved with relative ease through Defendant's own records."). Differences in the amounts of restitution owed to Class members do not preclude class certification where, as here, the amounts can be derived through a commonly

applied formula.  *See*, *e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *Yokoyama*, 594 F.3d at 1094 ("damages calculations alone cannot defeat class certification").

The amount of restitution can be easily calculated.  ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████  *See* Berns Decl., Ex. 38-Kurland Decl.,

¶¶15-18.  ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████  Kurland  Decl., ¶¶16-17.  ███████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███  ██████████  Kurland Decl., ¶¶16-18.

Plaintiffs  also  are  entitled  to  seek,  and  the  Court  has  wide  discretion  to  award, restitution  from  any  funds  Defendants  received  from  the  sale  of  these  mortgages  in  the secondary  market.  Funds  paid  to  a  defendant  by  third  parties  are  subject  to  UCL  restitution, as  long  as  they  can  be  traced  to  the  monies  paid  and  lost  by  the  plaintiffs.  *Ferrington v. McAfee, Inc.*, Case No. 1020 cv 01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010).[15]

---

[15] In *Ferrington*, defendant McAfee  agreed with a third party, Arpu, to deceive customers into signing up for Arpu's services upon completing a transaction with McAfee, at which time McAfee transferred the consumers' payment information to Arpu. McAfee received a fee from Arpu for every customer's data that was transferred. McAfee argued restitution was not available because it was not paid directly by the plaintiffs.  *Id.,* at * 7-8.  The court disagreed.  "The distinction …between restitutionary disgorgement and non-restitutionary disgorgement does not turn on whether Plaintiffs paid money directly to the defendant.  It turns, rather, on whether the profits sought to be

### 4.   **The Class Action Mechanism is Superior.**

The test for superiority of a class action requires "determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Lymburner*, 263 F.R.D. at 543; *see also Plascencia*, 259 F.R.D. at 449 ("[A]djudicating class members' claims in a single action would be superior to maintaining a multiplicity of individual actions involving similar legal and factual issues.").

Here, as in *Lymburner* and *Plascencia*, the alternative mechanism would be individual claims for relatively small amounts of damages. This would not only burden the court system that would be deciding the same legal issues in a number of small cases, but would also not make economic sense for litigants or lawyers. It is likely that in many, if not most, individual cases, "litigation costs would dwarf potential recovery." *Id.*[16]

## V.   **CONCLUSION**

For all of the reasons set forth, the Court should certify the proposed Classes and Sub-Classes.

DATED:      April 12, 2012              **BERNS WEISS LLP**

By:   ___s/Jeffrey K. Berns_____
Jeffrey K. Berns
20700 Ventura Boulevard, Suite 140
Woodland Hills, CA 91364
Tel.:  (818) 961-2000
Fax:  (818) 936-0232

– and –

---

disgorged would merely 'return the status quo by return to plaintiff funds in which she has an ownership interest' or would achieve something broader." *Id.*, at *9.
[16] There also is no reason to believe that prosecution of Class members' claims in a single class action will create more management problems than would the alternative of thousands of individual lawsuits.  Given the number and import of the common questions described above, the adjudication of class claims would not be significantly more burdensome than if the matter were prosecuted individually.  Moreover, it is well accepted that "a class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *In re VisaCheck/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (The mere possibility of complexity or un-manageability does not defeat a class action).

Plaintiffs' Motion for Class Certification - 8:11-cv-0079-JST (RNBx)

Lee A. Weiss (admitted *pro hac vice*)
626 RXR Plaza
Uniondale, New York 11556
Tel.: (516) 222-2900
Fax: (818) 936-0232

**WILLIAMS CUKER BEREZOFSKY LLC**
Mark R. Cuker (admitted *pro hac vice*)
1515 Market Street, Suite 1300
Philadelphia, PA 19103-1819
Tel.: (215) 557-0099
Fax: (215) 557-0673

**SPIRO MOORE LLP**
J. Mark Moore
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, California 90064-1683
Tel.: (310) 235-2468
Fax: (310) 235-2456

**ARBOGAST BOWEN LLP**
David M. Arbogast
Chumahan B. Bowen
11400 W. Olympic Blvd., 2nd Floor
Los Angeles, CA 90064
Tel.: (310) 477-7200
Fax: (310) 943-2309

**SMOGER & ASSOCIATES**
Gerson H. Smoger (SBN 79196)
Steven M. Bronson (SBN 246751)
3175 Monterey Blvd
Oakland, CA, 94602-3560
Tel.: (510) 531-4529
Fax: (510) 531-4377

**ANDRUS ANDERSON LLP**
Jennie Lee Anderson (SBN 203586)
155 Montgomery St., Suite 900
San Francisco, CA 94104
Tel: (415) 986-1400
Fax: (415) 986-1474

**BLOOD HURST & O'REARDON LLP**
Timothy G. Blood (SBN 149343)
Thomas Joseph O'Reardon II (SBN 247952)
600 B Street, Suite No. 1550
San Diego, CA 92101
Tel.: (619) 338-1100
Fax: (619) 338-1101

Attorneys for Plaintiffs and the Proposed Classes

26