1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| TIMOTHY R. PEEL et al., | CASE NO. 8:11-cv-0079-JST (RNBx) |
|---|---|
| Plaintiffs, | |
| vs. | **ORDER GRANTING PLAINTIFFS'** |
| | **MOTION FOR CLASS** |
| BROOKSAMERICA MORTGAGE CORPORATION, INC et al., | **CERTIFICATION (Docs. 92, 96, 103)** |
| Defendants. | |

On April 12, 2012, Plaintiffs Timothy R. Peel and Cheryl G. Peel (collectively, "the Peels") filed a Motion for Class Certification. (Mot., Doc. 92.)[1] Defendants WAMU Asset Acceptance Corp. and Washington Mutual Mortgage Securities Corp. filed their Opposition on May 9, 2012. (Doc. 107.) Plaintiffs filed a Reply in support of the Motion for Class Certification on June 11, 2012. (Doc. 120.)

By order dated August 8, 2012, the Court vacated the hearing set for August 10, 2012, and took the matter under submission. (Doc. 142.) Having read the papers and considered the admissible evidence, the Court GRANTS Plaintiffs' Motion for Class Certification.

## I.  BACKGROUND

The Peels refinanced their existing home loan on November 21, 2006, with Defendant BrooksAmerica Mortgage Corporation ("BrooksAmerica"). (First Am. Compl. ("FAC") ¶ 3, Doc. 1-3.) The Peels entered into an Option Adjustable Rate Mortgage ("Option ARM") secured by the Peels' residence. (*Id.*) The same day BrooksAmerica originated the loan, it was sold to either Defendant Washington Mutual Mortgage Securities Corporation ("WMMSC") or Defendant WaMu Asset Acceptance Corporation ("WAAC") (collectively "WaMu"). (*Id.*) Although

---

[1] On May 18, 2012, Defendant Residential Funding Company, LLC filed a Notice of Bankruptcy and Effect of Automatic Stay. (Doc. 115.) Plaintiffs then filed a Notice of Partial Withdrawal of Motion for Class Certification Due to Bankruptcy Filing of Defendant Residential Funding Company, LLC. (Doc. 116.) In their Notice of Partial Withdrawal, Plaintiffs "withdr[e]w, without prejudice, the Plaintiffs' Motion for Class Certification (Doc. 92) that seeks to certify the proposed RFC-Class and BrooksAmerica-RFC Subclass." (*Id.*) Named Plaintiffs Russ Bebout, Michael Sanford, and Marilyn Sanford were seeking appointments as class representatives of the RFC-Class and BrooksAmerica-RFC Subclass. (Mot. at 2.) Consequently, they are not discussed in this Order. Named Plaintiff Desiree McIlrath is not seeking to serve as a class representative. (Mot. at 1, n.1.) Prior to filing its Notice of Bankruptcy, Defendant Residential Funding Company, LLC filed its Opposition on May 9, 2012. (Doc. 106.)

BrooksAmerica informed the Peels that the loan was sold to one of these two Defendants, (*id.*), it is not clear to the Court whether the Defendants have identified to which entity the Peels' loan was sold. Copies of the Note, Truth in Lending Disclosure Statement ("TILDS"), and Prepayment Penalty Rider (collectively the "Loan Documents") are attached to the FAC as Exhibit 1. (*Id.*)

Plaintiffs allege that all prospective class members received Option ARMs having similar characteristics—namely, that the Loan Documents omitted material facts about the loans' true costs and terms. (Mot. at 4.) In each, there is a monthly payment amount stated in the Note that is based on a low "teaser" interest rate, typically ranging from 1% to 2%. (Mot. at 1.) In each, the payment schedule listed in the TILDS for the first 3–5 years of the Note was based upon a fully amortizing payment at the low teaser interest rate. (*Id.*) After thirty days, however, the interest rate went up to the sum of the "index" and the "margin"—an amount "far higher" than the teaser rate. (*Id.*) As a result of the foregoing, Plaintiffs allege that in following the payment schedule given to them by BrooksAmerica, "negative amortization" was *certain* to occur. (*Id.* at 4.)[2]

On the basis of these alleged material omissions, Plaintiffs assert that the Loan Documents are "deceptive," and that the classwide use of the Loan Documents constitutes an "unlawful," "fraudulent," or "unfair" business practice under California Business & Professions Code Section 17200 *et seq*.[3] (Mot. at 1.)

Defendants did not originate or service Plaintiffs' loans. Rather, Plaintiffs allege that Defendants aided and abetted BrooksAmerica and other originators in their use of the deceptive Loan Documents. Specifically, Plaintiffs allege that

---

[2] Negative amortization occurs when the unpaid part of the actual monthly payment due is added to the principal balance; this results in a loss of equity.

[3] The Court dismissed Plaintiffs' breach-of-contract claim by Order dated June 1, 2011. *See Peel v. BrooksAmerica*, 788 F. Supp. 2d 1149 (C.D. Cal. 2011). Plaintiffs are not moving for class certification of their common-law fraud claim. (Mot. at 2, n.2.)

Defendant WMMSC and loan originators entered into selling-and-servicing agreements and other contracts approving of the purchase of Option ARM loans. (Mot. at 11.) Plaintiffs further allege that Defendant WMMSC provided "commitments" to warehouse lenders that such lenders required before providing the loan funds to originators such as BrooksAmerica; thus, without the commitments Defendant WMMSC provided to the warehouse lenders, the Option ARM loans would not have closed. (Mot. at 5-6.) Moreover, Plaintiffs allege that Defendant WMMSC purchased loans only from originators, including BrooksAmerica, that met WWMSC-approved underwriting criteria. (Mot. at 8.) In these ways, Plaintiffs claim, Defendants aided and abetted BrooksAmerica and other originators in violating the UCL through the use of the allegedly deceptive Loan Documents.[4]

On May 2, 2012, Plaintiffs moved to certify the following class and subclass on their UCL claim:

Proposed WaMu Class

All individuals who obtained an Option ARM Loan from January 16, 2004 through the date that notice is mailed to the Class, which loan (1) was acquired by Washington Mutual Mortgage Securities Corp. ("WMMSC") or WaMu Asset Acceptance Corp. ("WAAC") by paying all or part of the sale price to the lender that maintained the originating entity's line of credit; (2) was secured by real property in the State of California; (3) was not originated by a national bank, federal savings association, or an affiliate, division, subdivision, predecessor, or parent of WMMSC or WAAC; and (4) had the following characteristics: (a) the "Interest Rate" paragraph of the Note (¶ 2) states both (i) a "yearly" Interest Rate that is less than the index plus the margin; and (ii) that the Interest Rate "may" rather than "will" change; (b) the "Initial Monthly Payment" listed in the Note is based upon the yearly interest rate listed in paragraph 2; and (c) the Note does not contain any statement that after the first

---

[4] Defendant WMMSC would securitize the loans it purchased through Defendant WAAC. (Mot. at 7.)

> Interest Rate Change Date, paying the amount listed as the "Initial Monthly Payment" [']'will" result in negative amortization or deferred interest. Excluded from this Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives, located in the United States of America.

(Mot. at 3-4.)

<u>Proposed BrooksAmerica-WaMu Subclass</u>

> All WaMu Class members whose Option ARM loans were originated by BrooksAmerica Mortgage Corporation.

(*Id.* at 4.)

## II. DISCUSSION

### A. <u>Ascertainability</u>

Before a class may be certified, it is axiomatic that such a class must be ascertainable. *See, e.g.*, *Galvan v. KDI Distribution Inc.*, No. SACV 08-0999-JVS (ANx), 2011 WL 5116585, at *3 (C.D. Cal. Oct. 25, 2011) ("[T]here are implied prerequisites to class certification that the class must be sufficiently definite and ascertainable."). The proposed class definition relies on objective criteria— namely, whether certain features are absent or present from the Loan Documents. A review of the relevant universe of loan files will thus reveal whether one is a class member or not. Because this inquiry will be finite and objective, the class is ascertainable.

Defendants argue in part that the class is unascertainable because "Plaintiffs provide no evidence that all loans purchased by WMMSC or WAAC (or all loans originated by BrooksAmerica) contain (or don't contain) that required language, or even that it is feasible to determine which borrowers' loans fit within the class definition." (Opp'n at 8.) However, if a given loan does not contain the language required for class membership, or if it contains language that must be

5

absent to be a class member, then that borrower will not be a class member—i.e., Defendants' argument demonstrates the ascertainability of the class.

Defendants also argue that such a determination would require an individual examination of each loan file, and that BrooksAmerica went out of business in 2007 and its files are consequently inaccessible. (Opp'n at 8-9.) First, whether ascertainability requires a loan-by-loan review does not militate against certification, and Defendants do not provide authority for that proposition. If this class were not certified and instead myriad lawsuits were brought by individual plaintiffs, such a review would still be required. Moreover, Defendants' contention that the files are "inaccessible" is belied by the deposition testimony Defendants cite, which discloses that the documentation is in "storage" and that someone could "pull all of the loans, and look at all of the documents." (LeMar Decl. Ex. L (Brooks Depo. 232:12-21), Doc. 107.)

Because a review of the records and an application of objective criteria will disclose whether a borrower is a class member, the Court finds that the class is ascertainable.

### B. Legal Standard for Class Actions under Rule 23

As the Supreme Court recently reaffirmed, "[t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (citation omitted). "To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Dukes*, 131 S. Ct. at 2550. Under Rule 23(a), the party seeking certification must demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 131 S. Ct. at 2548. Here, Plaintiffs seek certification of the class under Rule 23(b)(3), which permits maintenance of a class action if

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551. This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

### C. Requirements Under Rule 23(a)

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff has put forth evidence that its proposed WaMu Subclass alone may consist of as many as 781

1  members. (Mot. at 13.) Defendants do not argue in their Opposition that
2  Plaintiffs have failed to demonstrate numerosity. The Court concludes that
3  Plaintiffs have sufficiently proven numerosity.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 131 S. Ct. at 2551 (internal quotation marks and citation omitted). The plaintiff must allege that the class' injuries "depend upon a common contention" that is "capable of classwide resolution." *Id.* In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted).

Plaintiffs have carried their burden of demonstrating commonality. As explained below, no individualized inquiry will be required in this case because under the UCL, absent class members do not have to prove injury, causation/reliance, or damages. The common questions in this litigation will focus on whether the Loan Documents were deceptive in light of the alleged material omissions, and whether the use of such deceptive Loan Documents constituted an unlawful, fraudulent, or unfair business practice within the meaning of the UCL. As Plaintiffs have crafted their lawsuit, these common questions are amenable to common answers. When the Court, at trial, answers the question whether such omissions in the Loan Documents violated the UCL, that determination "will resolve an issue that is central to the validity of each one of the [class members'] claims in *one stroke*." *Dukes*, 131 S. Ct. at 2551 (emphasis

added). Contrary to Defendants' assertions, what brokers or other third parties represented to borrowers or what additional disclosures they provided to borrowers is irrelevant because the class members do not have to prove reliance.

**Class Members Do Not Have to Prove Reliance or Injury under the UCL**

While, under the California Supreme Court's decision in *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ("*Tobacco II*"), a class representative must demonstrate reliance and injury, non-representative class members do not have to make such a showing. *See id.* at 326-27; *see also McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174, 191 (2010) ("Turning to the questions of reliance and damage (injury), as *Tobacco II* emphasized, '[C]alifornia courts have repeatedly held that relief under the UCL [including restitution] is available *without individualized proof of deception, reliance and injury*.' This holds true in the post-Proposition 64 world for non-representative class members.") (emphasis added) (citation omitted).

The Ninth Circuit's decision in *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (2011), explained the effect of *Tobacco II*:

> The [California Supreme Court] had no doubt that California law had been changed by the voters so that a person who sought to be a class representative did have to show some additional factors as to himself, including injury in fact and causation. That repaired the danger of frivolous strike suits, but it decidedly did not change the California rule 'that relief under the UCL is available without individualized proof of deception, reliance and injury. Thus, the *district court's concerns about reliance and causation were not well taken*.

*Id.* at 1020 (emphasis added) (internal citations omitted).

*Stearns* arose out of a "deceptive internet scheme," whereby customers, after completing an online ticket order with Ticketmaster, were shown an advertisement: "Click above to learn how to get $25 Cash Back from

9

1  Entertainment Rewards." *Id.* at 1017. If the ticket-purchaser clicked on the
2  advertisement and input his or her email address twice, and clicked "Sign Me Up"
3  or "Yes," the customer's credit-card information was transferred from
4  Ticketmaster to a third party, and the customer was enrolled in a program with
5  automatic renewal. *Id.* On the basis of those facts, plaintiffs brought suit for,
6  *inter alia*, violation of the UCL. *Id.*

7  The *Stearns* court reversed the district court's denial of a class-certification
8  motion because the "district court determined that individual issues predominated
9  for purposes of the UCL claim because individual proof of reliance and causation
10 would be required." *Id.* at 1020. The district court issued its decision, however,
11 before *Tobacco II* was handed down, "and that case makes all the difference in the
12 world." *Id.*

13 As in *Stearns*, because no individualized proof of deception, reliance, and
14 injury is required of the absent class members under their UCL claim, the Court's
15 inquiry at trial will be directed at the Loan Documents, and not any oral
16 representations made by, or additional disclosures provided by, brokers or other
17 third parties. Or in the words of the Ninth Circuit in *Yokoyama v. Midland*
18 *National Life Insurance Company*, 594 F.3d 1087, 1093 (9th Cir. 2010):
19 "Plaintiffs' case will not require the fact-finder to parse what oral representations
20 each broker made to each plaintiff. Instead, the fact-finder will focus on the
21 standardized written materials given to all plaintiffs . . . ." (citations omitted).

22 The issue in *Yokoyama* was whether the marketing of certain annuities to
23 seniors was deceptive in violation of Hawaii's Deceptive Practices Act. *Id.* at
24 1089. The Ninth Circuit concluded that the district court erred as a matter of law
25 in its determination that "each plaintiff would have to show subjective,
26 individualized reliance on deceptive practices within the circumstances of each
27 plaintiff's purchase of the annuity." *Id.* In so concluding that subjective reliance
28

10

was required, the district court denied the plaintiffs' motion for class certification on predominance grounds. *Id.* The Ninth Circuit reversed, concluding that the Hawaii Supreme Court had made clear that the test for deception under the state's Deceptive Practices Act was an objective, not subjective, one. *Id.*

The *Yokoyama* court explained:

> These plaintiffs base their lawsuit only on what Midland [the defendant] did not disclose to them in its forms. The jury will not have to determine whether each plaintiff subjectively relied on the omissions, but will instead have to determine only whether those omissions were likely to deceive a reasonable person. This does not involve an individualized inquiry.

*Id.* at 1093.

The panel noted that the district court had also erred in concluding that the "plaintiffs' claims involve separate questions of fact as to what information the independent brokers selling [the annuities] conveyed":

> The plaintiffs' allegations, however, are that the deceptive acts or practices are omissions or misstatements in Midland's own brochures. . . . The plaintiffs have thus crafted their lawsuit so as to avoid individual variance among the class members. Plaintiffs' case will not require the fact-finder to parse what oral representations each broker made to each plaintiff. Instead, the fact-finder will focus on the standardized written materials given to all plaintiffs and determine whether those materials are likely to mislead consumers acting reasonably under the circumstances.

*Id.*

While *Yokoyama* concerned a Hawaii statute, its analysis is directly on point because no individual proof of reliance by class members is required under either statute. Plaintiffs base their UCL claim only on the Loan Documents. Therefore, the Court at trial will not have to determine whether each class member "subjectively relied on the omissions"; therefore, no individual inquiry will be required at trial. *Id.* Consequently, litigation of this case on a class basis will

11

1 produce common answers that will resolve all of the class members' claims in
2 "one stroke." *See Dukes*, 131 S. Ct. at 2551.[5]

### 3. Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Stearns*, 655 F.3d at 1019 (internal citation and quotation marks omitted).

Plaintiffs argue that their claims are "reasonably co-extensive" because they are based on the same Loan Documents that class members received. (Mot. at 15). In contrast, Defendants contend that the Peels' claims are not typical because they cannot demonstrate actual reliance. (Opp'n at 15.)

As discussed at length above, under *Tobacco II*, a class representative must indeed prove reliance. *See Tobacco II*, 46 Cal. 4th at 326. While the Defendants point to evidence that Mr. Peel relied on his broker's representations or assurances, Plaintiffs cite to evidence showing that Mr. Peel relied, at least in part, on the allegedly deficient loan documents. (Moore Decl. Ex. 2 (T. Peel Depo. at 146:11-147:9), Doc. 121.) Thus, the Peels' claims, and those of the class members, rest on similar, if not identical, legal arguments. Accordingly, Mr. Peel's claim cannot be said to be atypical. *See Tobacco II*, 46 Cal. 4th at 326

---

[5] This Court's conclusion is in harmony with several other district courts, which have reached the same conclusion in similar Option ARM loan cases. *See, e.g.*, *Lymburner v. U.S. Financial Funds, Inc.*, 263 F.R.D. 534 (N.D. Cal. 2010); *Plasencia v. Lending 1st Mortgage*, 259 F.R.D. 437 (N.D. Cal. 2009); *Ralston v. Mortgage Investors Group, Inc.*, No. 5:08-cv-00536-JF (PSG), 2012 WL 629238 (N.D. Cal. Feb. 27, 2012) (*Ralston II*). *But see In re Countrywide Financial Corporation Mortgage Marketing and Sales Practices Litigation*, 2011 WL 6325877 (S.D. Cal. Dec. 16, 2011).

("While a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct, the plaintiff need not demonstrate that it was the only cause.").[6]

### 4. Adequacy

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

First, the Court considers whether Plaintiffs have any conflicts with the proposed class. Plaintiffs contend that because their claims are virtually co-extensive with the class members, there is no conflict. The Defendants challenge Plaintiffs' adequacy in a footnote, offering no argument or analysis; rather, Defendants merely cite *Navellier v. Sletten*, 262 F.3d 932, 941 (9th Cir. 2001), as upholding a certification denial on the basis of inadequacy because the class representative was subject to unique defenses. (Opp'n at 15-16, n.14.) As discussed above, the Court rejects those unique-defenses arguments. The Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).[7]

---

[6] Defendants further argue that Mrs. Peel does not have standing because she relied entirely on her husband. The Court is not persuaded by this parsing of marital decision-making. As with Mr. Peel, it cannot be said that Mrs. Peel is atypical. Moreover, the deposition excerpt purportedly containing Mrs. Peel's testimony that she did not read the documents and instead relied entirely on her husband was not included in the unredacted Chambers copy of Exhibit B to the LeMar Declaration.

[7] The Court also rejects Defendants' argument that Plaintiffs do not have standing to "prosecute claims involving fraudulent conduct by non-party lenders." (Opp'n at 12.) Article III standing requires injury-in-fact, traceability, and redressability. *Lujan v.*
(footnote continued)

Second, as to the adequacy of Plaintiff's counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Here, the proffered firm biographies of Plaintiffs' counsel disclose substantial class-action experience. (Exhibits 46-49 to Weiss Decl.) Defendants do not challenge Plaintiffs' counsel's adequacy. The Court concludes that Plaintiffs' counsel is adequate.

### D. Requirements Under Rule 23(b)

In addition to establishing the elements of Rule 23(a), Plaintiffs must also satisfy one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b). Plaintiffs seek certification under Rule 23(b)(3). (Mot. at 15.) For the reasons set forth below, the Court holds that certification is appropriate under Rule 23(b)(3).

#### 1. Rule 23(b)(3)

Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and [2] that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. R. 23(b)(3) (emphases added). When examining a class that seeks certification under Rule 23(b)(3), the Court may consider:

---

*Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs are alleging that Defendants aided and abetted lenders, including BrooksAmerica, in violating the UCL. Therefore, under Plaintiffs' theory, their injuries are traceable to Defendants' conduct and redressable through restitution, as provided for under the UCL.

14

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. R. 23(b)(3).  The Court finds that Plaintiffs' claim satisfies both the predominance and superiority requirements.

The Supreme Court has explained that the predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 597, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1778 (2d ed.1986)).

As discussed above, the common issues predominate in this litigation. Because the absent class members do not have to show subjective reliance, the inquiry will be limited to the Loan Documents.  Thus, predominance is satisfied. *See Yokoyama*, 594 F.3d at 1093 (reversing district court's denial of certification where the "fact-finder will focus on the standardized written materials given to all plaintiffs").[8]

---

[8] The Defendants also argue that its statute-of-limitations defense presents an individual question that precludes a finding of predominance, yet Defendants do not argue that the Peels are time-barred.  Thus, a potential statute-of-limitations defense does not preclude a finding of predominance. *See Cameron v. E. M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) ("We hold that the presence of individual issues of compliance
(footnote continued)

1    The Court further finds that a class action would be a superior method of
2  adjudicating Plaintiff's claims. "The superiority inquiry under Rule 23(b)(3)
3  requires determination of whether the objectives of the particular class action
4  procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023.
5  "This determination necessarily involves a comparative evaluation of alternative
6  mechanisms of dispute resolution." *Id.* Here, each member of the class pursuing
7  a claim individually would burden the judiciary and run afoul of Rule 23's focus
8  on efficiency and judicial economy. *See Vinole v. Countrywide Home Loans, Inc.*,
9  571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial
10 by class representation would further the goals of efficiency and judicial
11 economy."). Further, litigation costs would likely "dwarf potential recovery" if
12 each class member litigated individually. *Hanlon*, 150 F.3d at 1023. "Where
13 recovery on an individual basis would be dwarfed by the cost of litigating on an
14 individual basis, this factor weighs in favor of class certification." *Wolin v.*
15 *Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citations
16 omitted).

17    Considering the non-exclusive factors under Rule 23(b)(3)(A)-(D), the
18 Court finds that class members' potential interests in individually controlling the
19 prosecution of separate actions and the potential difficulties in managing the class
20 action do not outweigh the desirability of concentrating this matter in one
21 litigation. *See* Fed. R. Civ. P. 23(b)(3)(A), (C), (D). The Court is not aware of
22 any litigation concerning the controversy already commenced by or against

---

with the statute of limitations here does not defeat the predominance of the common questions."); *cf. Herrera v. LCS Fin. Serv. Corp.*, 274 F.R.D. 666, 681 (N.D. Cal. 2011) ("The fact that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification.").

16

members of the class. *See* Fed. R. Civ. P. 23(b)(3)(B). Therefore, the Court finds that the class may be certified under Rule 23(b)(3).

### 2. Restitution

A private plaintiff in a UCL action is generally limited to injunctive and restitutionary relief. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Plaintiffs allege that they are entitled to recover as restitution "the negative amortization they incurred, the capitalized interest charged on the negative amortization (interest on interest), and any prepayment penalties they paid to escape the loans." (Mot. at 23.)[9] The Court agrees that such monies would be recoverable as restitution if proven at trial in this case. It is of no moment that Defendants did not receive these monies. The Court already concluded that Plaintiffs have stated a UCL claim against Defendants under a theory of aiding and abetting. *See Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149 (C.D. Cal. 2011). Under this theory, Defendants' liability under the UCL claim is co-extensive with that of the primary violator; therefore, Plaintiffs may recover from Defendants if they prove their case at trial.

At this stage of the litigation, the Court concludes that "calculation of restitution on a classwide basis appears to be workable." *Ralston v. Mortg. Investors Group, Inc.*, No. 5:08-cv-00536-JF (PSG), 2012 WL 1094633, at *2 (N.D. Cal. Mar. 30, 2012) (*Ralston III*). Plaintiffs' expert, Dale Kurland, declares

---

[9] Plaintiffs also seek "restitution from any funds Defendants received from the sale of these mortgages in the secondary market." (Mot. at 24.) This is plainly disgorgement—a nonrestitutionary remedy the California Supreme Court concluded was not available under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003) ("We hold that nonrestitutionary disgorgement of profits is not an available remedy in an individual action under the UCL."). *See also Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008) ("The California Supreme Court has determined that this phrase [in Cal. Bus. & Prof. Code § 17203] allows awards of restitution, but not awards of non-restitutionary disgorgement.")

17

1 that companies such as Defendants, or their servicers, maintain mortgage
2 servicing software that would contain information sufficient to determine the
3 negative amortization amount accrued and paid, and the amount of "interest on
4 interest" paid by each borrower, (Berns Decl. Ex. 38 (Kurland Decl.) ¶¶ 15-18,
5 Doc. 97.), and that "such information should be readily available in electronic
6 format." (*Id.* ¶ 18.)

Ultimately, while "it is no license to approach the class certification question with insouciance, Rule 23 also provides that an 'order that grants or denies class certification may be altered or amended before final judgment.'" *Norris-Wilson v. Delta-T* Group, 270 F.R.D. 596, 601 (S.D. Cal. 2010) (citing Fed. R. Civ. P. 23(c)(1)(C)). Hence, the decision to certify a class is "inherently tentative." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n. 11 (1978). Therefore, as this litigation proceeds, if it becomes apparent that determining restitution on a classwide basis will be unmanageable, the Court can revisit its decision to certify this class at that time. *See Falcon*, 457 U.S. 147, 160 ("Even after a certification order is entered, the judge remains fee to modify it in the light of subsequent developments in the litigation."). Based on Plaintiffs' expert's declaration, at this time, the Court concludes that "calculation of restitution on a classwide basis appears to be workable." *Ralston III*, 2012 WL 1094633 at *2.

### E. <u>Rule 23(g) – Appointment of Class Counsel</u>

Under Rule 23(g), "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). As previously stated in this Order, the Court is satisfied that Plaintiffs' counsel is adequate and thus may be appointed as Class Counsel in this case.

### III. CONCLUSION

For the reasons set forth above the Court GRANTS Plaintiffs' Motion for Class Certification as set forth below.

(1) The following Rule 23(b)(3) class is CERTIFIED under the California Unfair Competition Law:

> All individuals who obtained an Option ARM Loan from January 16, 2004 through the date that notice is mailed to the Class, which loan (1) was acquired by Washington Mutual Mortgage Securities Corp. ("WMMSC") or WaMu Asset Acceptance Corp. ("WAAC") by paying all or part of the sale price to the lender that maintained the originating entity's line of credit; (2) was secured by real property in the State of California; (3) was not originated by a national bank, federal savings association, or an affiliate, division, subdivision, predecessor, or parent of WMMSC or WAAC; and (4) had the following characteristics: (a) the "Interest Rate" paragraph of the Note (¶ 2) states both (i) a "yearly" Interest Rate that is less than the index plus the margin; and (ii) that the Interest Rate "may" rather than "will" change; (b) the "Initial Monthly Payment" listed in the Note is based upon the yearly interest rate listed in paragraph 2; and (c) the Note does not contain any statement that after the first Interest Rate Change Date, paying the amount listed as the "Initial Monthly Payment" "will" result in negative amortization or deferred interest. Excluded from this Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives, located in the United States of America.

(2) The following Rule 23(b)(3) subclass is CERTIFIED under the California Unfair Competition Law: "All WaMu Class members whose Option ARM loans were originated by BrooksAmerica Mortgage Corporation."

(3) Plaintiffs Timothy R. Peel and Cheryl G. Peel are APPOINTED as class representatives.

(4) Plaintiff's counsel of record, Berns Weiss LLP, Williams Cuker Berezofsky LLC, Spiro Moore LLP, and Arbogast Bowen LLP, as Co-

1       Lead Counsel for the Class and Subclass, are APPOINTED as class

2       counsel.

3  (5) The Court directs the parties to meet-and-confer, and to submit an agreed-

4       on form of class notice that will advise class members of, among other

5       things, the restitution sought and their rights to intervene, opt out, submit

6       comments, and contact class counsel. The parties shall also jointly submit

7       a plan for dissemination of the proposed notice. The parties shall work

8       together to generate a class list to be used in disseminating class notice.

9       The proposed notice and plan of dissemination shall be filed with the Court

10      on or before **November 10, 2012**.

14      DATED: August 30, 2012

                                            JOSEPHINE STATON TUCKER
                                            UNITED STATES DISTRICT JUDGE