**BERNS WEISS LLP**
Jeffrey K. Berns (SBN 131351)
jberns@bernsweiss.com
Lee A. Weiss (admitted *pro hac vice*)
lweiss@bernsweiss.com
20700 Ventura Boulevard, Suite 140
Woodland Hills, CA 91364
Tel.: (818) 961-2000
Fax: (818) 999-1500

**SPIRO MOORE LLP**
J. Mark Moore (SBN 180473)
mark@spiromoore.com
11377 W. Olympic Blvd., Fifth Floor
Los Angeles, CA 90064-1683
Tel.: (310) 235-2468
Fax: (310) 235-2456

**WILLIAMS CUKER BEREZOFSKY LLC**
Mark R. Cuker (admitted *pro hac vice*)
mcuker@wcblegal.com
1515 Market Street, Suite 1300
Philadelphia, PA 19102
Tel.: (215) 557-0099
Fax: (215) 557-0673

**ARBOGAST BOWEN LLP**
David M. Arbogast (SBN 167571)
david@arbogastbowen.com
Chumahan B. Bowen (SBN 268136)
cbowen@arbogastbowen.com
11400 W. Olympic Blvd., 2nd Floor
Los Angeles, CA 90064
Tel.: (310) 477-7200
Fax: (310) 943-2309

*Attorneys for Plaintiffs*
*[Additional counsel listed in signature block]*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY R. PEEL AND CHERYL G. PEEL, RUSS BEBOUT, MICHAEL SANFORD AND MARILYN SANFORD and DESIREE MCILRATH on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BROOKSAMERICA MORTGAGE CORPORATION, a California Corporation; WASHINGTON MUTUAL MORTGAGE SECURITIES CORP., formerly sued as DOE 1; WAMU ASSET ACCEPTANCE CORP., formerly sued as DOE 2; RESIDENTIAL FUNDING COMPANY, LLC, formerly sued as DOE 3; and DOES 4 through 200 inclusive,<br><br>Defendants. | Case No. 8:11-cv-00079-JST (RNBx)<br><br>CLASS ACTION<br><br>**JOINT REPORT REGARDING CLASS NOTICE AND CLASS DISSEMINATION**<br><br>Complaint Filed: February 5, 2010<br>FAC Filed: October 20, 2010<br>Case Removed: January 14, 2011<br>Trial Date: None set |

TO THE HONORABLE COURT:

Pursuant to this Court's Order Granting Plaintiffs' Motion for Class Certification (Dkt. No. 147), plaintiffs Timothy and Cheryl Peel and defendants Washington Mutual Mortgage Securities Corporation ("WMMSC") and WaMu Asset Acceptance Corporation ("WAAC") (collectively, "the parties") jointly submit the following status report regarding class notice and class dissemination.

## I.   **PROCEDURAL BACKGROUND.**

On August 30, 2012, the Court entered its Order Granting Plaintiffs' Motion for Class Certification (Dkt. No. 147).  In that order, the Court certified the following class under the California Unfair Competition Law:

> All individuals who obtained an Option ARM Loan from January 16, 2004 through the date that notice is mailed to the Class, which loan (1) was acquired by Washington Mutual Mortgage Securities Corp. ("WMMSC") or WaMu Asset Acceptance Corp. ("WAAC") by paying all or part of the sale price to the lender that maintained the originating entity's line of credit; (2) was secured by real property in the State of California; (3) was not originated by a national bank, federal savings association, or an affiliate, division, subdivision, predecessor, or parent of WMMSC or WAAC; and (4) had the following characteristics: (a) the "Interest Rate" paragraph of the Note (¶ 2) states both (i) a "yearly" Interest Rate that is less than the index plus the margin; and (ii) that the Interest Rate "may" rather than "will" change; (b) the "Initial Monthly Payment" listed in the Note is based upon the yearly interest rate listed in paragraph 2; and (c) the Note does not contain any statement that after the first Interest Rate Change Date, paying the amount listed as the "Initial Monthly Payment" "will" result in negative amortization or deferred interest. Excluded from this Class are Defendants' employees, officers, directors, agents, representatives, and their family members, as well as the Court and its officers, employees, and relatives, located in the United States of America.

(*Id*. at 19.)

The Court also certified the following subclass:  "All WaMu Class members whose Option ARM loans were originated by BrooksAmerica Mortgage Corporation." (*Id*.)

---

1

Joint Report Regarding Class Notice and Class Dissemination

Case No. 8:11-cv-00079-JST (RNBx)

1    In addition, the Court ordered the following:

2    The Court directs the parties to meet-and-confer, and to submit an
     agreed on form of class notice that will advise class members of,
3    among other things, the restitution sought and their rights to
     intervene, opt out, submit comments, and contact class counsel. The
4    parties shall also jointly submit a plan for dissemination of the
     proposed notice. The parties shall work together to generate a class
5    list to be used in disseminating class notice. The proposed notice
     and plan of dissemination shall be filed with the Court on or before
6    November 10, 2012.

7    (*Id*. at 20.)

8    ## II.    PROPOSED NOTICE OF CERTIFIED CLASS.

9         The parties' proposed class notice, which is attached hereto as Exhibit 1,

10   complies with Fed. R. Civ. P. 23.  Rule 23(c)(2)(B) stipulates that "[t]he notice must

11   clearly and concisely state in plain, easily understood language":

12        **(i)** the nature of the action;

13        **(ii)** the definition of the class certified;

14        **(iii)** the class claims, issues, or defenses;

15        **(iv)** that a class member may enter an appearance through an

16   attorney if the member so desires;

17        **(v)** that the court will exclude from the class any member who

18   requests exclusion;

19        **(vi)** the time and manner for requesting exclusion; and

20        **(vii)** the binding effect of a class judgment on members under

21   Rule 23(c)(3).

22   Fed. R. Civ. P. 23(c)(2)(B); *see Mortimer v. Baca*, No. 00-13002, 2005 WL

23   3497817, at *2 (C.D. Cal. Dec. 20, 2005) (citing Rule 23(c)(2)(B) and enumerating

24   mandatory information that class notice must contain).

25        The proposed Class Notice also satisfies both Rule 23(c)(2)(B) and due

26   process in that it provides ample explanation of the litigation, the classes that the

27

28
                                            2

1  Court has defined, class members' rights (including the right to request exclusion

2  from the class and the deadline for doing so), and the consequences of a failure to

3  opt out of the litigation.[1]  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797,

4  812 (1985) ("[D]ue process requires at a minimum that an absent plaintiff be

5  provided with an opportunity to remove himself from the class by executing and

6  returning an 'opt out' or 'request for exclusion' form to the court.").

7      The Class Notice also advises prospective members that they may obtain

8  further information by contacting the class notice administrator through a toll-free

9  number or by accessing a dedicated website that the notice administrator will set up

10  and that will contain relevant information, including pleadings and pertinent Court

11  rulings in the case.  Plaintiffs have not yet selected an administrator, as they plan to

12  seek multiple bids for the work once the parties have determined the size of the

13  class.  Thus, the Class Notice satisfies the threshold test that "[a] class notice must

14  only have 'information that a reasonable person would consider to be material in

15  making an informed, intelligent decision of whether to opt-out or remain a member

16  of the class.'"  *Krzesniak v. Cendant Corp.*, No. 05-5156 MEJ, 2007 WL 4468678,

17  at *1 (N.D. Cal. Dec. 17, 2007) (quoting *In re Nissan Motor Corp. Antitrust Litig.*,

18  552 F.2d 1088, 1105 (5th Cir. 1977)).

19      Moreover, the Class Notice is written in plain English, not "lawyerese," and

20  its content is neutral and objective, not slanted or accusatory, in tone.  *See Shaffer v.*

21  *Continental Cas. Co*., 362 Fed. Appx. 627, 631 (9th Cir. 2010) ("Notice is not

22  adequate if it misleads potential class members.") (unpublished decision) (citing

23  *Molski v. Gleich*, 318 F.3d 937, 952 (9th Cir. 2003)); *In re Nissan Motor Corp.*

24
25
26
27

[1] The Class Notice will require that class members mail a written request for exclusion to the specified address.  Requiring such an affirmative step on their part will ensure that members do not exclude themselves from the classes inadvertently.

28

3

Joint Report Regarding Class Notice and Class Dissemination

*Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977) (to satisfy Rule 23(c)(2)(B).

## III.   PROPOSED BROOKSAMERICA SETTLEMENT NOTICE.

As BrooksAmerica has represented to Plaintiffs it has no assets with which to satisfy a judgment, Plaintiffs have agreed to a settlement with BrooksAmerica whereby the BrooksAmerica-WaMu Subclass will release BrooksAmerica in exchange for an affidavit from BrooksAmerica concerning its financial condition that also affirms all of the factual statements made by its CEO in a deposition in this action.  As that settlement requires notice to the Class and a fairness hearing, in accordance with Rule 23, Plaintiffs and BrooksAmerica believe that, in order to minimize the costs to the BrooksAmerica-WaMu Subclass, the notice of the settlement should be sent out at the same time as the Class Notice.  Thus, at the appropriate time, Plaintiffs and BrooksAmerica will file a joint motion for preliminary approval of their settlement.

## IV.   STATUS OF CLASS DETERMINATION AND DISSEMINATION.

### A.   Determination of a Class List.

Plaintiffs and WMMSC are diligently working together to determine a class list.  Under the class definition, there are four requirements for determining whether someone is a member of the class:

**1.   Whether the loan "was acquired by [WMMSC] or [WAAC] by paying all or part of the sale price to the lender that maintained the originating entity's line of credit."  (Order at 19.)**

**WMMSC's Position:**

WMMSC is able to identify the loans it purchased from third-party originators, but WMMSC is unable to identify systematically whether those loans were purchased by "paying all or part of the sale prices to the lender that maintained the originating entity's line of credit."  Because WMMSC stopped purchasing loans

1   in 2007, its records regarding loan purchases are not readily accessible and are not

2   consistently categorized.[2]

3         The only way for WMMSC to determine whether a particular borrower's loan

4   falls within the class definition is to examine the documents relating to WMMSC's

5   purchase of that loan from the originating lender to determine if there are any wire

6   instructions relating to each purchase transaction.  Contrary to Plaintiffs' arguments

7   below, simply because an originating lender maintained a warehouse line of credit

8   at the time it applied to sell loans to WMMSC does not necessarily mean that a

9   warehouse line of credit was used throughout the lender's relationship with

10  WMMSC or that all loans the lender sold to WMMSC were funded through that

11  warehouse line of credit.  In fact, as an officer of Plaza Home Mortgage (one of the

12  entities that sold Option ARM loans to WMMSC) testified, Plaza Home sometimes

13  used its own funds to originate Option ARM loans, and *did not* use a warehouse line

14  of credit to fund every Option ARM loan it originated.  (*See* Dkt. No. 107-5 (Decl.

15  of Michael Fontaine).)  There is no reason to believe Plaza Home is unique in this

16  regard.  Thus, it should not be assumes that all of its purchases of Option ARM

17  loans were made by paying the originating lender's line of credit, nor can it be

18  assumed that, simply because one transaction with a particular lender involved a

19  warehouse line of credit, all transactions with that lender involved a warehouse line

20  of credit.

21        WMMSC is conducting a manual search of systems and servers that are no

22  longer in use to determine what, if any information, it has in its possession, custody,

23  or control regarding wire transfers associated with WMMSC's purchase of Option

24  ARM loans.  WMMSC has located some documents that appear to contain wire

25  _____

26  [2] WAAC did not purchase loans directly from originating lenders and, therefore, did not acquire any Option ARM loans by "paying all or part of the sale prices to

27  the lender that maintained the originating entity's line of credit."

28

transfer information regarding some of its purchases from two originating lenders, but the documents are not organized (by seller, date, document type, or any other manner), and there does not appear to be a consistent naming mechanism for files. Therefore, to determine whether a particular document contains wire transfer information requires a manual review of each document that may potentially have wire transfer information.

WMMSC entered into fifteen transactions with BrooksAmerica to purchase Option ARM loans.  Assuming that WMMSC entered into ten to twenty different purchase transactions with each of the other forty originating lenders from which it purchased Option ARM loans, there may be between 400 and 800 (or more) documents that will need to be located and reviewed.  WMMSC cannot ensure that any search will result in all of the wire transfer information relating to all of WMMSC's purchases of California Option ARM loans.  Thus, WMMSC may not have access to, or be able to locate, all of the documents necessary to tell whether each purchase was made by "paying all or part of the sale prices to the lender that maintained the originating entity's line of credit."

WMMSC is attempting to determine if there are any additional electronic repositories where all of these documents might reside.  Based on the time it has taken WMMSC to find the documents with wire transfer information that it has been able to locate, WMMSC estimates it may take at least several more months to determine whether it has in its possession, custody, or control documents sufficient to allow the parties or the Court to determine if a particular loan was purchased by WMMSC by "paying all or part of the sale prices to the lender that maintained the originating entity's line of credit."

To the extent Plaintiffs argue that it is unnecessary to determine whether a particular loan was purchased by WMMSC paying the originating lender's line of

Joint Report Regarding Class Notice and Class Dissemination

Case No. 8:11-cv-00079-JST (RNBx)

credit at this point in time because an over-inclusive class notice may be appropriate in some circumstances, a class notice indicating that potential class members "may" have a claim is inappropriate in this case.  Plaintiffs' proposition would involve two class notices:  one preliminary notice to borrowers who "may" be in the class and another later notice to borrowers if they are determined to actually fall within the class.  Although an over-inclusive class notice may make sense in cases where a person's status as a class member depends on some information or document that is in his or her possession, that is not the case here.  Borrowers cannot determine whether WMMSC purchased their Option ARM loans by paying down their originating lenders' warehouse lines of credit.

Sending two notices would be confusing to class members and would be a waste of the parties' and the Court's time and resources.  Given that the Court certified a class with the specific criterion – *proposed by Plaintiffs* – that WMMSC paid "all or part of the sale prices to the lender that maintained the originating entity's line of credit," it should be determined which borrowers' loans fit within the class definition (if such a determination can be made for each loan) before sending notice to any potential class members.

**Plaintiffs' Response:**

Within the next week, Plaintiffs intend to notice the deposition of a WMMSC person with knowledge regarding Defendants' factual representations concerning the process of identifying class members and the alleged difficulties that Defendants claim they are encountering in that process.

Plaintiffs note that Defendants appear to be suggesting that the parties must ensure that they do not send notice to any borrower without first ensuring that borrower is in fact encompassed within the class.  However, there is no bar to an over-inclusive class notice where it appears that efforts to ensure that the notice is

limited only to actual class members would require an inordinate expenditure of time and resources. See, e.g., *Koyle v. Level 3 Communications, Inc.*, No. CV 01-0286-S-BLW, 2010 WL 3168346, *3 (D. Idaho, Aug. 6, 2010) (approving the plaintiffs' notice plan even though the notice list might be "over-inclusive," where the notice stated merely that recipients "may" have a claim). Thus, Plaintiffs contend that as long as Defendants are able to locate one payment by to a warehouse lender on account of a particular originator, that justifies a conclusion that all borrowers whose loans were originated by that originator may be within the class, without the need for additional proof that every single borrower's loan was in fact purchased from that originator by WMMSC by "paying all or part of the sale prices to the lender that maintained the originating entity's line of credit." Plaintiffs believe – and have alleged – that nearly all of the originators whose loans are included within the class utilized warehouse lines of credit to fund the vast majority, if not all, of their loans, because most originators in the industry lacked sufficient resources to fund the loans themselves. Naturally, if Defendants have specific evidence to the contrary, Plaintiffs will consider it.

In addition, the applications that originators submitted to WMMSC in order to obtain approval to sell loans to WMMSC should contain information regarding the originators' warehouse lender(s), as exemplified by the file for Defendant-originator Brooks America, which was previously produced by WMMSC to Plaintiffs. That file showed that BrooksAmerica submitted warehouse line of credit information to WMMSC at the time of its application to become an approved seller of mortgages to WMMSC; such information would also have been included annual financial statements which originators were required to submit to WMMSC. See e.g. WMMSC 01531. While Defendants assert that it will take months to locate wire transfer information and to determine whether particular loans were purchased

by WMMSC in a manner qualifying for inclusion in the class, Plaintiffs believe that Defendants should instead produce the seller application files, and any other relevant documents, so that the parties can jointly determine whether the sellers' warehouse lenders are identified in those files.  To the extent that they are, the warehouse lenders can be subpoenaed for the relevant payment records, thereby hopefully minimizing efforts on Defendants' part that Defendants represent may take several months.

Plaintiffs also expect that the individual who WMMSC produces in response to the deposition notice discussed above will be able to shed further light on these matters.

**2.     Whether the loan was "secured by real property in the State of California."  (Order at 19.)**

Since the Court entered its Order, WMMSC has been diligently working to identify all Option ARM loans it purchased from January 16, 2004 to the present, secured by real property in the State of California.  WMMSC has identified approximately 19,000 loans and will provide Plaintiffs with a list, pursuant to the protective order entered in this case, that includes the following information regarding each loan, to the extent available:  (1) borrower name; (2) property address; (3) mailing address; (4) loan number; (5) the current or last-known servicer; (6) information regarding the originator.  WMMSC hopes to provide this list to Plaintiffs' counsel by November 16, 2012.

**3.     Whether a loan "was not originated by a national bank, federal savings association, or an affiliate, division, subdivision, predecessor, or parent of WMMSC or WAAC."  (Order at 19.)**

WMMSC has provided Plaintiffs with a list of all originators from which WMMSC purchased Option ARM loans.  The parties are working together to

9

Joint Report Regarding Class Notice and Class Dissemination

Case No. 8:11-cv-00079-JST (RNBx)

determine which originators should be excluded based on the above-referenced language in the class definition.

**4.      Whether the Option ARM note "had the following characteristics: (a) the 'Interest Rate' paragraph of the Note (¶ 2) states both (i) a 'yearly' Interest Rate that is less than the index plus the margin; and (ii) that the Interest Rate 'may' rather than 'will' change; (b) the 'Initial Monthly Payment' listed in the Note is based upon the yearly interest rate listed in paragraph 2; and (c) the Note does not contain any statement that after the first Interest Rate Change Date, paying the amount listed as the 'Initial Monthly Payment' 'will' result in negative amortization or deferred interest."  (Order at 19.)**

**WMMSC's Position:**

Because neither WMMSC nor WAAC services or owns the loans they once held – including the Option ARM loans secured by real property in California that they once held – WMMSC and WAAC do not have possession, custody, or control of the notes.  Since the Court entered its Order, WMMSC has been diligently attempting to determine the current or last-known servicer for all Option ARM loans it purchased from January 16, 2004 to the present, secured by real property in the State of California.  WMMSC hopes to have this information for most, if not all, of the loans within the next two weeks.

Once WMMSC is able to determine the current or last-known servicer for each of the California Option ARM loans it purchased, WMMSC will provide that information to Plaintiffs, who must then subpoena the various servicers in order to obtain copies of the notes.  The language of each note must then be reviewed to determine whether the note falls within the class definition.  The parties will work together to determine the best method for reliably determining which borrowers' notes fall within the class definition and which notes do not, whether that involves a

sampling of each originator's notes or whether every note must be reviewed. WMMSC expects this process to take between three to six months, depending on the length of time it takes for the subpoenaed servicers to respond and provide the notes and the length and complexity of the review process to ensure an accurate class list.

**Plaintiffs' Response:**

Plaintiffs have no knowledge regarding the allegedly diligent nature of Defendants' search for the identity of mortgage loan servicers, beyond what they have been told by Defendants' counsel.  During a telephone call on November 8, 2012, Defendants' counsel guessed that a substantial number of the loans covered by the class definition may be serviced by a single loan servicer, JPMorgan Chase Bank, N.A. ("Chase"), Defendants' affiliate.  During that telephone call, Plaintiffs' counsel suggested that it made sense for Defendants' counsel to simply ask Chase whether it would produce the relevant notes for the loans it purchased without requiring a subpoena, but that Plaintiffs' would provide a subpoena if necessary, and Defendants' counsel agreed to work with Chase's counsel to determine whether Chase will produce the relevant notes with or without a subpoena.

Defendants have not yet identified the precise number and identity of non-Chase servicers who serviced loans in the class, but, given that a majority of the loans are likely serviced by Chase, Plaintiffs do not think that it will take more than three months to determine which notes are in the class by issuing subpoenas to the non-Chase servicers.  Plaintiffs note that the process could move more quickly if the Court were willing to implement a streamlined procedure (vis-a-vis the Central District's regular cumbersome discovery motion procedure) to address any disputes regarding the servicer subpoenas.

**B.      Plan of Dissemination of Notice of the Certified Class.**

1    If the class members can be reliably determined and a class list can be

2 complied, then the parties will report back to the Court regarding a plan of

3 dissemination of class notice.  The parties presently contemplate direct mail notice

4 to the class.

5

6 Dated:  November  13, 2012         **BERNS WEISS LLP**

7

8                                   By:___/s/ *Jeffrey K. Berns* _____
                                    Jeffrey K. Berns
9                                   20700 Ventura Boulevard, Suite 140
                                    Woodland Hills, CA 91364
10                                  Tel.:  (818) 961-2000
11                                  Fax:  (818) 999-1500

12                                  – and –

13
                                    Lee A. Weiss (admitted *pro hac vice*)
14                                  626 RXR Plaza
                                    Uniondale, New York 11556
15                                  Tel.:  (818) 961-2000
16                                  Fax:  (818) 999-1500

17
                                    **WILLIAMS CUKER BEREZOFSKY**
18                                  **LLC**
                                    Mark R. Cuker (admitted *pro hac vice*)
19                                  1515 Market Street, Suite 1300
20                                  Philadelphia, PA 19103-1819
                                    Tel.:  (215) 557-0099
21                                  Fax:  (215) 557-0673
22

23                                  **SPIRO MOORE LLP**
                                    J. Mark Moore
24                                  11377 W. Olympic Boulevard, Fifth Floor
25                                  Los Angeles, California 90064-1683
                                    Tel.:  (310) 235-2468
26                                  Fax:  (310) 235-2456
27
                                    12
28 ───────────────────────────────────────────────────────────
     Joint Report Regarding Class Notice and Class Dissemination

                                    Case No. 8:11-cv-00079-JST (RNBx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARBOGAST BOWEN LLP**
David M. Arbogast
Chumahan B. Bowen
11400 W. Olympic Blvd., 2nd Floor
Los Angeles, CA 90064
Tel.:  (310) 477-7200
Fax:  (310) 943-2309

**SMOGER & ASSOCIATES**
Gerson H. Smoger (SBN 79196)
Steven M. Bronson (SBN 246751)
3175 Monterey Blvd
Oakland, CA, 94602-3560
Tel.:  (510) 531-4529
Fax:  (510) 531-4377

**ANDRUS ANDERSON LLP**
Jennie Lee Anderson (SBN 203586)
155 Montgomery St., Suite 900
San Francisco, CA 94104
Tel: (415) 986-1400
Fax: (415) 986-1474

*Attorneys for Plaintiffs and the Class*

Dated:  November 13, 2012

**BURKE, WARREN, MACKAY & SERRITELLA, P.C.**

By:   /s/ *Stephen R. Meinertzhagen*
Stephen R. Meinertzhagen (admitted *pro hac vice*)
smeinertzhagen@burkelaw.com
LeAnn Pedersen Pope (admitted *pro hac vice*)
lpope@burkelaw.com
Andrew D. LeMar (admitted *pro hac vice*)
alemar@burkelaw.com
330 North Wabash Avenue, 22nd Floor
Chicago, Illinois 60611-3607
Telephone: 312-840-7000

13

Joint Report Regarding Class Notice and Class Dissemination

Case No. 8:11-cv-00079-JST (RNBx)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Washington Mutual Mortgage Securities Corporation and WaMu Asset Acceptance Corporation*

Joint Report Regarding Class Notice and Class Dissemination

Case No. 8:11-cv-00079-JST (RNBx)