UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY R. PEEL, ET AL.,<br><br>  Plaintiffs,<br><br>  vs.<br><br>BROOKSAMERICA MORTGAGE CORP., ET AL.,<br><br>  Defendants. | CASE NO. SACV 11-79-JLS (RNBx)<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 192) AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS, AND INCENTIVE PAYMENTS (Doc. 189)** |

## I. INTRODUCTION

Before the Court is Plaintiffs' Motion for Final Approval of Class Action Settlement. (Final Approval Mot., Doc. 192.) Also before the Court is Plaintiffs' Motion for Award of Attorneys' Fees and Costs, and Incentive Payments. (Attorneys' Fees Mot., Doc. 189.) Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court GRANTS Plaintiffs' Motions.

## II. BACKGROUND

This action involves alleged material omissions in loan documents for Option Adjustable Rate Mortgage Loans purchased after closing by Washington Mutual Mortgage Securities Corp. ("WMMSC") and/or WaMu Asset Acceptance Corp. ("WAAC"). Plaintiffs Timothy Peel and Cheryl Peel filed the action on February 5, 2010, in Orange County Superior Court. (Doc. 1.) On October 20, 2010, Plaintiffs filed a First Amended Complaint ("FAC") asserting claims against Brooksamerica Mortgage Corp.,[1] WMMSC, WAAC, and Residential Funding Company, LLC[2] for (1) fraudulent omission, (2) violation of California's Unfair Competition Law ("UCL"), and (3) breach of contract. (FAC, Docs. 1-3, 1-4.) On January 14, 2011, WMMSC and WAAC removed the action to this Court. (Notice of Removal, Doc. 1.)

Plaintiffs contend that the loan documents at issue contained a monthly payment amount stated in the Note based on a low "teaser rate." (*See* Cert. Order at 3, Doc. 147.) However, after thirty days, the interest rate went up to the sum of the

---

[1] The Court has granted the parties' stipulation to dismiss without prejudice all claims asserted against Brooksamerica Mortgage Corp. (Doc. 204.)

[2] The Court has granted the parties' stipulation to dismiss with prejudice all claims asserted against Residential Funding Company, LLC. (Doc. 194.)

"index" and the "margin" — an amount far higher than the teaser rate. (Id.) As a result, a borrower's minimum payment was less than the interest on the loan, and if the borrower made only the minimum payment, unpaid interest was added to the principal balance (*i.e.*, negative amortization). (Id.)

On June 1, 2011, the Court granted in part and denied in part Defendants' Motions to Dismiss. (Doc. 49.) The Court dismissed Plaintiffs' breach of contract claim with prejudice, but denied the Motions with respect to the fraud and UCL claims. (Id.) On August 30, 2012, the Court issued an Order granting Plaintiffs' Motion for Class Certification. (Cert. Order.) In the Order, the Court certified Plaintiffs' UCL claim as a class consisting of the following members:

> [a]ll individuals who obtained an Option ARM Loan from January 16, 2004 through the date that notice is mailed to the Class, which loan (1) was acquired by Washington Mutual Mortgage Securities Corp. ("WMMSC") or WaMu Asset Acceptance Corp. ("WAAC") by paying all or part of the sale price to the lender that maintained the originating entity's line of credit; (2) was secured by real property in the State of California; (3) was not originated by a national bank, federal savings association, or an affiliate, division, subdivision, predecessor, or parent of WMMSC or WAAC; and (4) had the following characteristics: (a) the "Interest Rate" paragraph of the Note (¶ 2) states both (i) a "yearly" Interest Rate that is less than the index plus the margin; and (ii) that the Interest Rate "may" rather than "will" change; (b) the "Initial Monthly Payment" listed in the Note is based upon the yearly interest rate listed in paragraph 2; and (c) the Note does not contain any statement that after the first Interest Rate Change Date, paying the amount listed as the "Initial Monthly Payment" "will" result in negative amortization or deferred interest.

3

(Cert. Order at 19.) The Court also appointed Timothy and Cheryl Peel as Lead Plaintiffs and Berns Weiss LLP, Williams Cuker Berezofsky LLC, Spiro Moore LLP, and Arbogast Bowen LLP as Co-Lead Counsel. (Id. at 19-20.)

After participating in a mediation before the Hon. Diane M. Welsh (Ret.) in May 2013, the parties reached a settlement in principal. (Berns. Decl. ¶ 11, Doc. 177-1.) On August 16, 2013, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement. (Doc. 163.) In the Motion, Plaintiffs proposed a settlement class definition similar to the definition of the certified class, but omitting the requirement that class members' loans have the purportedly misleading features identified in the definition of the certified class. (Id. at 5-6.) On October 29, 2013, the Court issued an Order denying the Motion. (Prelim. Appr. Order, Doc. 169.)

After receiving the Court's Order, the parties amended the settlement agreement. (Berns Decl. Ex. 2 ("Agreement"), Doc. 177-1.) The amended agreement provides for a Settlement Class consisting of the following members:

> all individuals who obtained an Option ARM Loan from January 16, 2004, through the date that notice is mailed to the Class, which loan (1) was acquired by Washington Mutual Mortgage Securities Corp. ("WMMSC") or WaMu Asset Acceptance Corp. ("WAAC"); (2) was serviced at any time by Washington Mutual Bank; (3) was secured by real property in the State of California; (4) was not originated by: (i) a national bank or federal savings association; (ii) an operating subsidiary of a national bank or a federal savings association; (iii) an affiliate, division, subdivision, predecessor, or parent of WMMSC or WAAC; and (5) had the following characteristics: (a) the "Interest Rate" paragraph of the Note (¶ 2) states both (i) a "yearly" Interest Rate that is less than the index plus the margin; and (ii) that the Interest Rate

> "may" rather than "will" change; (b) the "Initial Monthly Payment" listed in the Note is based upon the yearly interest rate listed in paragraph 2; and (c) the Note does not contain any statement that after the first Interest Rate Change Date, paying the amount listed as the "Initial Monthly Payment" "will" result in negative amortization or deferred interest.

(Agreement § 1.21.) Plaintiffs employed a forensic and financial consulting firm to identify loans containing the features specified in the definition of the Settlement Class. (Berns Decl. ¶ 14, Doc. 177-1.) The consulting firm determined that 16,574 loans contained those features. (Regan Decl. ¶ 12, Doc. 177-1.)

The agreement requires WMMSC and WAAC to establish a settlement fund of $10,000,000. (Agreement § 2.1.) Plaintiffs' counsel may apply for an award of attorney's fees and costs, which may not exceed 30% of the fund. (Id. § 3.2.) The Peels may apply for an incentive award of $5,000 each from the fund. (Id. § 3.5.) Settlement costs not to exceed $110,000 may also be paid from the fund. (Id. § 4.1.) The remainder of the fund will be distributed to class members, other than opt-outs, using the following payment scheme:

|  | **Length of Time WMMSC/WAAC Owned the Loan** | | |
|---|---|---|---|
| **Original Loan Balance** | 0 to < 2 months | 2 to < 4 months | 4 months-plus |
| **$0 to $299,999** | $239 | $418 | $597 |
| **$300,000 to $450,000** | $298 | $477 | $656 |
| **$450,001-plus** | $358 | $537 | $716 |

(Payment Schedule, Ex. E, Doc. 177-1.) If the amount remaining in the fund is greater than the minimum amount of $6,880,000, then each payment will be increased by the percentage difference between $6,880,000 and the actual amount of the remaining fund. (Agreement § 12.1.) If the total amount of uncashed settlement checks is less than $200,000, these unclaimed funds will be subject to a *cy pres*

5

1  distribution to the National Consumer Law Center and National Foundation for
2  Credit Counseling. (Id. § 12.7.) If the total amount of uncashed settlement checks
3  is more than $200,000, that amount, less additional administration costs, will be
4  distributed equally to all class members who have cashed their settlement checks.
5  (Id.) In return for the above consideration, the members of the Settlement Class,
6  other than opt-outs, will release WMMSC and WAAC and certain affiliated persons
7  and entities from, among other things, claims asserted, or attempted to be asserted,
8  in this action, as well as claims arising out of or relating to Defendants' conduct in
9  the origination, making, or sale of the loans at issue. (Id. § 9.1.)

The Court granted Plaintiff's motion for preliminary approval on November 13, 2014. (Preliminary Approval Order, Doc. 187.) The Court also amended its class certification Order so that the definition of the class reflects the definition of the Settlement Class agreed to by the parties. (Id. at 8.)

On June 27, 2014, counsel for WMMSC and WAAC mailed CAFA Notices to the Office of the Comptroller of Currency and the Consumer Financial Protection Bureau. (Pope Decl. ¶ 6, Doc. 190; Pope Decl., Ex. A, Doc. 190.) On December 2, 2014, the parties' Settlement Administrator issued notice to the class pursuant to the terms of the settlement agreement. (Ferrara Decl. ¶ 8, Doc. 197; Ferrara Decl., Ex. A, Doc. 197.) The class notice was mailed to 16,573 class members at the property addresses provided by WMMSC and WAAC and updated through the National Change of Address database. (Ferrara Decl. ¶ 8.) The notice instructed class members that they could obtain more detailed information about the settlement and directed them to the settlement website, which went live on November 26, 2014. (Id. ¶¶ 12-13.) The Settlement Administrator re-mailed 65 returned notices that had

forwarding addresses or updated addresses. (Id. ¶ 8.) Out of the 2,440[3] returned notices that did not have forwarding addresses, the Settlement Administrator was able to identify 1,045 new addresses through a standard skip trace, and re-mailed notices to the new addresses. (Id.) The Settlement Administrator has been unable to obtain valid new addresses for 1,483 notices that have been returned as undeliverable.[4] (Id.) The deadline for opt-outs and objections has now passed, and the Settlement Administrator has received seven written requests for exclusion that were mailed prior to the exclusion deadline.[5] (Id. ¶ 9.) Class Counsel has not received any objections. (Final Approval Mot. at 12-13.) Finally, on December 3 and 4, 2014, the Settlement Administrator published notice of the settlement in the classified section of *USA Today*. (Ferrara Decl. ¶ 11.)

Pursuant to the settlement and the Court's Order granting Plaintiffs' motion for preliminary approval, on January 2, 2015, Plaintiffs moved for attorneys' fees, litigation costs, and incentive payments. (Attorneys' Fees Mot.) On February 27, 2015, Plaintiffs filed their Motion for Final Approval of Class Action Settlement. (Final Approval Mot.)

## III. FINAL APPROVAL OF SETTLEMENT

Rule 23(e)(2) requires the Court to determine whether the proposed

---

[3] Plaintiffs' Final Approval Motion states that the Settlement Administrator "received 2,392 returned Individual Class Notices that did not have forwarding addresses." (Final Approval Mot. at 11.)

[4] Plaintiff's Final Approval Motion states that notices for "1,459 unique Class Member loans have been returned as undeliverable and [the Settlement Administrator] has been unable to obtain valid new addresses for them." (Final Approval Mot. at 11-12.)

[5] The Settlement Administrator also received one exclusion request after the deadline and one exclusion request that did not comply with the procedures set forth in the notice. (Final Approval Mot. at 12 n. 7.) "Class counsel respectfully requests the Court grant these unopposed requests for exclusion." (Id.) The Court grants these additional two requests for exclusion, and thus a total of nine exclusion requests have been submitted by class members.

7

settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). To determine whether a settlement agreement is fair, reasonable, and adequate, "a district court must [ultimately] consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;[6] and (8) the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

The Court finds the factors listed above favor final approval of the Settlement.

### A.  Strength of Plaintiffs' Case

Plaintiffs argue that, even though they believe that they would ultimately prevail, "[t]he case is especially tenuous as WMMSC and WAAC continue to deny any wrongdoing and would certainly challenge . . . liability and the measure and amount of restitution recoverable" if this case were to proceed. (Final Approval Mot. at 15.) Plaintiffs contend that, in the absence of a settlement, a jury could

---

[6] This factor does not apply in the case.

determine that the disclosures at issue in this case were sufficient. (Id. at 16.) Further, Plaintiffs recognize that, based on prior precedent, there is "some risk that their classwide restitution theory under the UCL still might not be accepted by this Court or an appeals court, and thus that Settlement Class Members may be found not to be entitled to substantial or even any restitution under the UCL." (Id. at 16-17.)

As the Court stated when granting Plaintiffs' motion for preliminary approval, these risks create uncertainties that the settlement avoids by providing for a fund of $10,000,000 for the benefit of the class. (Preliminary Approval Order at 11; Agreement § 2.1.) The settlement amount represents a positive result for the class. (Id.) Further, the settlement includes a fair, reasonable, and adequate scheme for distributing payments to class members. (Preliminary Approval Order at 11.)

The Court therefore concludes that this factor weighs in favor of granting final approval.

**B.     Complexity and Expense of Further Litigation**

This action settled after four years of litigation. (Final Approval Mot. at 2.) Plaintiffs note that "WMMSC and WAAC continue to dispute the class action status of this litigation, and have indicated that, absent the Settlement, they would move for decertification in the future on the grounds that [Plaintiffs] cannot establish that UCL restitution can be calculated on a classwide basis" and commonality is lacking. (Id. at 17; Berns Decl. ¶ 5, Doc. 192-1.) Given the risks inherent in the class certification process and trial, the Class could be decertified and recover nothing. (*See* Final Approval Mot. at 17.) Undoubtedly, the expenses incurred by the Class will increase as the case progresses. Without a settlement, Plaintiffs and Class members would have to confront the contested factual and legal issues in pretrial motions and at trial.

9

The Court therefore finds that this factor favors approving the Settlement.

### C. Risk of Maintaining Class Action Status through Trial

As discussed above, Plaintiffs have identified grounds on which Defendants could seek to decertify the class if the settlement is not approved. (Id. at 17-18.)

The risk of decertification should the action proceed favors approving the settlement.

### D. Amount Offered in Settlement

The Court finds that the amount offered in settlement is reasonable. The settlement provides for a settlement fund of $10,000,000. (Agreement § 2.1.) Plaintiffs' counsel have applied for an award of fees and costs of $3,000,000 to be paid from the fund, and the two Class Representatives have applied for two separate awards of $5,000. (*See* Final Approval Mot. at 9; Attorneys' Fees Mot. at 2.) Up to $110,000 in administration costs are also to be paid from the fund. (Agreement § 4.1) The settlement provides that the remaining balance of the settlement fund will be distributed to those class members whose addresses have been confirmed and who have not requested exclusion from the settlement. (Id. § 12.1; Final Approval Mot. at 9.) As a result, individual distributions are estimated to range between $239 and $716 per class member, but those figures will increase to take into account the exclusions and the class members who could not be located. (*See* Final Approval Mot. at 9, 19.) Compared to Plaintiffs' expert's opinion that the maximum potential recovery in this case is approximately $21,000,000, (*see* Berns Decl. ¶ 18, Doc. 189-1; Bern Decl., Ex. A, Regan Decl. ¶16, Doc. 189-1), the Court finds that the settlement offers a substantial benefit to the Class.

Considering the difficulties regarding class certification and potential recovery under the UCL discussed above, the Court finds that this factor weighs in

favor of granting final approval.

### E. Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). This action settled after four years of litigation. (Final Approval Mot. at 2.) Extensive discovery had occurred during that time. (Preliminary Approval Order at 12; Final Approval Mot. at 5, 14.) Significant written discovery has been served, hundreds of thousands of documents have been reviewed, and numerous depositions have been taken. (Final Approval Mot. at 5, 19-20.) Experts have been hired to analyze the merits of the case and estimate the maximum amount of damages recoverable should Plaintiffs succeed at trial. (Id. at 8, 20.)

Accordingly, the Court finds that the parties have sufficient information to make an informed decision about settlement. As such, the Court finds that this factor favors approving the Settlement.

### F. Absence of Collusion

The Court finds no signs, explicit or subtle, of collusion between the parties. The maximum award of $3,000,000 in attorneys' fees and expenses authorized by the settlement agreement is not disproportionate to the benefits that have inured to the class as a result of this action. The same is true with respect to the two $5,000 incentive payments Plaintiffs seek under the settlement. Moreover, this Settlement is the result of a mediation held before the Honorable Diane M. Welsh (Ret.). The mediator's involvement in the settlement is an additional factor that supports the argument that it is non-collusive. *See Satchell v. Fed. Exp. Corp.*, No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

11

Accordingly, the Court is satisfied that the Settlement is the result of arms-length, non-collusive, and informed negotiations.

### G. Experience and Views of Counsel

Class Counsel, who have prior experience litigating class action lawsuits, have endorsed the Settlement as fair, reasonable, and adequate. (*See generally* Berns Decl., Doc. 189-1 and accompanying exhibits and declarations). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quotation marks omitted).

Accordingly, this factor favors approving the Settlement.

### H. Reaction of Class Members to Proposed Settlement

Notice was sent to all class members pursuant to the Court's preliminary approval Order. (Ferrara Decl. ¶ 8.) The deadline for opt-outs and objections has passed and only nine exclusion requests to the Settlement have been received. (Id. ¶ 9.) No formal objections have been mailed to class counsel. (Final Approval Mot. at 12-13.) "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also Cruz v. Sky Chefs, Inc.*, No. C-12-02705 DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (noting that a court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it").

Accordingly, the Court finds this factor weighs in favor of granting final approval.

Having considered the foregoing factors, the Court finds the proposed

Settlement is fair, reasonable, and adequate.[7]

## IV. ATTORNEYS' FEES

Class Counsel seeks an award of attorneys' fees of $2,933,600.73,[8] which is 29.3% of the settlement fund. (Attorneys' Fees Mot. at 1.)

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). In the Ninth Circuit, the benchmark for a fee award in a common fund case is 25% of the recovery obtained. *Id.* at 942. The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable and whether a departure from that figure is warranted, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of the work; and (4) the contingent nature of the fee and the financial burden carried by counsel in representing the class. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). The Court will consider each in turn.

### A. Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs, Inc.*, 559 F. Supp.

---

[7] The Court also approves Plaintiffs' proposed *cy pres* distribution to the National Consumer Law Center and National Foundation for Credit Counseling.

[8] Class Counsel seeks a total award of $3,000,000.00 for attorneys' fees and costs. (*See generally* Attorneys' Fees Mot.) Class Counsel requests $66,399.27 in costs. (Attorneys' Fees Mot. at 23; Berns Decl. ¶ 45, Doc. 189-1.) Thus, Class Counsel requests $2,933,600.73 in attorneys' fees ($3,000,000.00 - $66,399.27).

2d 1036, 1046 (N.D. Cal. 2008) (citation omitted). Here, a $10,000,000 settlement fund was created for 16,574 class members, and all class members who were able to be located and did not opt-out of the settlement will receive cash payments ranging from $239 to $716, at a minimum. (Attorneys' Fees Mot. at 7, 11.) Moreover, the fact that only nine class members opted-out and no class members objected further supports the conclusion that class counsel achieved an exceptional result on behalf of the class.

Thus, this factor weighs in favor of granting the requested fee award.

### B.    Risk of Litigation

The risk of litigation further supports this award. As discussed above, WMMSC and WAAC have indicated that, absent the settlement, they would move for decertification on the grounds that UCL restitution should not be calculated on a classwide basis. (Attorneys' Fees Mot. at 20; Final Approval Mot. at 17; Berns Decl. ¶ 5, Doc. 192-1.) Further, Plaintiffs recognize that there is a risk that a jury could find that the disclosures at issue in this case "do not rise to the level of deceptiveness that is required to support violations under the different prongs of the UCL." (Attorneys' Fees Mot. at 18-19.) If Defendants were to succeed in decertifying the class or prevail at trial, class members could receive no recovery, but additional resources would be spent by the parties.

The Court finds the risk that further litigation might result in Plaintiffs and class members not recovering anything weighs in favor of granting the requested fee award. *See Omnivision*, 559 F. Supp. 2d at 1047.

### C.    Skill Required and Quality of Work

Class counsel has expended thousands of attorney and paralegal hours on this complex case since it began. (*See generally* Berns Decl., Doc. 189-1 and

14

accompanying exhibits and declarations.) Class counsel developed the factual and legal claims of the case, sought extensive written and deposition discovery, reviewed nearly 300,000 pages of documents, retained experts to analyze the merits of Plaintiffs' claims and the potential damages recoverable in this action, engaged in extensive motion practice, and negotiated and drafted the settlement agreement. (Attorneys' Fees Mot. at 14-16; *see generally* Berns Decl., Doc. 189-1.)

This effort over the course of approximately four years weighs in favor of awarding the requested fee.

### D. Contingent Nature of the Fee

Class Counsel took this case on a contingent basis and has litigated it for over four years. (Attorneys' Fees Mot. at 20-21; Berns Decl. ¶ 31, Doc. 189-1.) Courts have recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing for their work. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *Vizcaino*, 290 F.3d at 1050. Moreover, class counsel's commitment of resources and the $66,399.27 incurred in expenses while litigating this matter are significant, further increasing the risk counsel assumed. (Attorneys' Fees Mot. at 21.) This factor therefore supports awarding the fees class counsel seeks.

Accordingly, the Court finds this factor weighs in favor of awarding the requested fee.

### E. Lodestar Crosscheck

Finally, courts use the lodestar method as a cross-check to determine the fairness of a fee award. *Vizcaino*, 290 F.3d at 1050. A lodestar multiplier of 1.5 is reasonable where a case settles early. *Fischel v. Equitable Life Assurance Soc'y of*

1 *U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002). Here, class counsel has expended
2 thousands of attorney and paralegal hours on this case in total. (*See generally* Berns
3 Decl., Doc. 189-1 and accompanying exhibits and declarations.) At their regular
4 and customary hourly rates, class counsel has incurred $2,471,155.25 in attorneys'
5 fees under the lodestar approach. (Berns Decl. ¶ 45, Doc. 189-1.) Class counsel
6 seeks $2,933,600.73 in attorneys' fees, only a 1.19 "fee multiplier" under the
7 lodestar approach. (Attorneys' Fees Mot. at 22.) The lodestar crosscheck therefore
8 confirms the reasonableness of a $2,933,600.73 fee award in this case.

9 For the foregoing reasons, the Court finds departure is warranted from the
10 Ninth Circuit's benchmark of 25% of the common fund recovery. Accordingly, the
11 Court approves class counsel's request for attorneys' fees in the amount of
12 $2,933,600.73.

**V. COSTS**

Class counsel also requests the Court approve $66,399.27 in expenses and litigation costs. (Attorneys' Fees Mot. at 23; Berns Decl. ¶ 45, Doc. 189-1.) The Amended Agreement provides that Class Counsel may seek an award of up to 30% for fees and costs. (Agreement § 3.2.) The total amount that class counsel now seeks for fees and costs complies with the limitation in the settlement agreement. "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Omnivision*, 559 F. Supp. 2d at 1048. Class counsel has documented expenses incurred in prosecuting this action. (*See generally* Berns Decl., Doc. 189-1 and accompanying exhibits and declarations). Class counsel also anticipates some additional costs associated with further filing and the final fairness hearing. (Attorneys' Fees Mot. at 22-23.) The Court concludes that class counsel's expenses are reasonable.

Accordingly, the Court approves the reimbursement of $66,399.27 in costs.

## VI. ENHANCEMENT TO THE CLASS REPRESENTATIVE

The settlement agreement authorizes $5,000 enhancement awards for Timothy and Cheryl Peel. (Agreement § 3.5.) District courts have the discretion to award incentive payments to named plaintiffs as compensation for their actions taken on behalf of the class. *Staton*, 327 F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). The Ninth Circuit recently emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). Here, the incentive award appears justified because for four years the Peels have (1) communicated with class counsel, (2) responded to class counsel's requests for information, (3) responded to discovery requests, (4) copied and produced hundreds of pages of documents, (5) expended significant time preparing and attending depositions, (6) and reviewed the settlement agreements and papers filed in this action. (Attorneys' Fees Mot. at 24; Berns Decl., Ex. 3, Timothy Peel Decl. ¶¶ 2-4, Doc. 192-1; Berns Decl., Ex. 4, Cheryl Peel Decl. ¶¶ 2-4, Doc. 192-1; Berns Decl. ¶ 48, Doc. 189-1.). *Cf. Rausch v. Hartford Fin. Serv. Grp.*, No. 01-CV-1529-BR, 2007 WL 671334, at *3 (D. Or. Feb. 26, 2007) (granting $10,000 incentive fee award).

Accordingly, the Court approves the $5,000 enhancement awards to Timothy and Cheryl Peel.

///
///
///
///

## VII. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motions.

| | |
|---|---|
| 1 | The parties shall file a proposed judgment in conformity with this Order |
| 2 | forthwith. |

DATED: April 6, 2015

_____
HONORABLE JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE